661 P.2d 1315

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Terry Wayne HUTCHINSON,
Defendant-Appellant.**

No. 13678.

Supreme Court of New Mexico.

March 16, 1983.

Rehearing Denied April 20, 1983.

Martha A. Daly, Santa Fe, for defendant-appellant.

Michael Stout, District Public Defender, Roswell, trial counsel.

Paul G. Bardacke, Atty. Gen., Marcia E. White, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

RIORDAN, Justice.

Terry Wayne Hutchinson (Hutchinson) was convicted of first degree murder for which he received life imprisonment, of a first degree kidnapping for which he received eighteen years and of armed robbery for which he received nine years. The sentences are to be served consecutively. Hutchinson appeals. We affirm.

The issues on appeal are:

I. Whether Hutchinson was denied his right to a fair trial when the trial court questioned prospective jurors during voir dire about their views on capital punishment, prior to any determination of guilt, and excused for cause those jurors who were automatically opposed to the death sentence.

II. Whether the trial court erred by admitting testimony of a witness who had undergone hypnosis.

III. Whether the trial court erred by ruling that George Schibley could testify as a rebuttal witness for the State.

IV. Whether there was sufficient evidence adduced at trial to identify Hutchinson as the perpetrator of the crimes charged.

V. Whether the evidence was sufficient to establish the intent necessary to sustain the conviction of kidnapping.

VI. Whether there was sufficient evidence to sustain the conviction for felony murder.

VII. Whether the trial court erred in admitting a wedding photograph of the victim for identification purposes.

VIII. Whether cumulative misconduct by the State denied Hutchinson a fair trial.

On October 15, 1979, according to the testimony of Dale High (High) and Gary Hart (Hart) at Hutchinson's trial, High, Hart and Hutchinson, who were "out of money", decided to go to a rest stop in High's car, to rob someone. Around midnight, the three proceeded to a rest stop north of Las Cruces, New Mexico. Sometime later, Linda Platt (Platt) arrived at the rest stop and parked her car. Hutchinson waited for Platt to go to sleep and then directed High to pull his car around to block her path. Hutchinson then approached Platt's car and broke the driver's side window with a "tire buddy" which is described as a piece of wood approximately sixteen inches long, with a weight at one end. Then he opened the car door, pushed Platt to the side and got in. Hutchinson drove Platt's car to another exit, while High and Hart followed. Hutchinson and Platt then got into High's car. Hutchinson told Hart to go through Platt's purse while High drove. During this time, Hutchinson was holding a butcher knife on Platt. Some-

time later, Hutchinson had sexual intercourse with her. At about 4:30 a.m., Hutchinson ordered High to pull off the highway. Hutchinson and Platt got out of the car and walked away from it. Hutchinson then hit Platt several times with the tire buddy. After this, Hutchinson stabbed Platt numerous times with a butcher knife. Hutchinson then called for help to which High responded. High and Hutchinson carried Platt up a hill and threw her in a ditch. High testified that after returning to the car, Hutchinson stated, "I think she's dead, but if she does live, she won't be able to talk, anyway, because I cut her throat." Platt's body was found in a decomposed condition on March 26, 1980, by a person walking his dog.

I. *Juror Selection*

Hutchinson asserts that he was denied his right to a fair trial when the trial court questioned prospective jurors during voir dire about their views on capital punishment prior to any determination of guilt. Those jurors who were opposed to the imposition of capital punishment were excused for cause.

Hutchinson was charged with capital murder[1]. Therefore, the jury was questioned about its views on capital punishment. Sixty-nine prospective jurors were called and broken down into small groups for voir dire. At this time, the trial court questioned the prospective jurors by asking the three questions recommended in U.J.I. Crim. 1.10, N.M.S.A.1978 (Repl.Pamp.1982).

The trial court read the following questions to each juror. If the juror answered in the negative to question one, then questions two and three were not asked of that juror.

1. In this case, the penalty of death may be imposed if the defendant is found

---

1. Terry Hutchinson was charged with aggravating circumstances Section 31–20A–5(B) and (G), N.M.S.A.1978 (Repl.Pamp.1981). Section 31–20A–5(B) reads," the murder was committed with intent to kill in the commission of or attempt to commit kidnaping, criminal sexual contact of a minor or criminal sexual penetration." Section 31–20A–5(G) reads, "the capital

felony was murder of a witness to a crime or any person likely to become a witness to a crime, for the purpose of preventing report of the crime or testimony in any criminal proceeding, or for retaliation for the victim having testified in any criminal proceeding." The jury, however, refused to impose the death penalty.

guilty of the crime with which he is charged. I am going to ask you specific questions concerning your view of the death penalty. I ask that each of you answer the questions either "yes" or "no." If you do not understand the questions, do not hesitate to tell me and I will repeat the question which you do not understand.

Do you oppose, for any reason, the imposition of the death penalty?

2. Because of your opposition to the death penalty, would you, regardless of the facts and circumstances which may be presented by the evidence during the trial, automatically refuse to vote for a verdict of guilty?

3. If you find the defendant guilty, would you, regardless of the facts and circumstances which may be presented by the evidence during the trial and the sentencing proceeding automatically refuse to vote for the sentence of death?

■ Under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), a prospective juror who simply voices general objections to the death penalty or expresses conscientious or religious scruples against its infliction cannot be excused for cause. The United States Supreme Court reasoned that although a prospective juror may oppose the death penalty, it does not necessarily mean that the juror cannot make the discretionary judgment entrusted to the juror by the State, and obey the oath the juror takes. *Id.; State v. Pace,* 80 N.M. 364, 456 P.2d 197 (1969). *Witherspoon* did not decide the question of when a juror may be excluded. However, in *Adams v. Texas,* 448 U.S. 38, 46, 100 S.Ct. 2521, 2527, 65 L.Ed.2d 581 (1980), the Court explicitly stated that a "State does not violate the *Witherspoon* doctrine when it excludes prospective jurors ·who are unable or unwilling to address the penalty questions with [a] degree of impartiality." In other words, a State may bar from jury service those whose beliefs about capital punishment would lead them to ignore the law or violate their oaths. *Adams v. Texas, supra.*

■ In the present case, only those prospective jurors who answered "yes" to questions one and three were excluded for cause. We agree with the trial court's determination that by answering "yes" to these questions, the prospective jurors were in effect saying that they could neither follow the laws of New Mexico nor their oaths as jurors; therefore, those jurors were properly excluded.

■ Hutchinson also asserts that the trial court committed reversible error by qualifying the jurors for a possible death penalty at the beginning of trial rather than waiting until after a determination of guilt. We recently answered this claim adversely to Hutchinson's position in *State v. Trujillo,* N.M., 657 P.2d 107 (1982)[2]. In fact, this is the only reasonable manner in which voir dire can be conducted. Otherwise, there is no way of knowing how many jurors should be impaneled.

■■ Finally, Hutchinson asserts that if the questioning of prospective jurors during voir dire about their views on capital punishment prior to any determination of guilt is allowed, then this death qualification portion should have been conducted individually with each juror. The decision whether to conduct individual voir dire lies within the discretion of the trial court. *State v. Frank,* 92 N.M. 456, 589 P.2d 1047 (1979). We ·hold that the trial court did not abuse its discretion in refusing to individually question the prospective jurors.

## II. *Hart's Testimony*

■ Hutchinson asserts that the trial court erred in admitting the testimony of Hart because Hart had been hypnotized four times prior to trial and therefore, Hart had been "exposed to the unduly suggestive technique of hypnosis."

On November 29, 1979, prior to the first hypnosis, Hart was interviewed by his attorney. The interview was taped and later transcribed. Hart's interview gives a pre-

2. *State v. Trujillo,* N.M., 657 P.2d 107 (1982), is cited *only* for this proposition.

hypnotic detailed account of the crimes involving Platt. These tapes were admitted into evidence at a hearing on the motion to suppress Hart's testimony.

On December 5, 1979, Assistant Chief Jim Robles of the Las Cruces Police Department, hypnotized Hart. The session lasted about an hour and took place in the Las Cruces Police Department. Sergeant Archuleta (Archuleta), an investigator for the Dona Ana County Sheriff's Department, was also present at this first session. An attempt to tape record the session failed for unexplained reasons. On December 8 and 15, 1979, Hart was again hypnotized, both times by Ben Klein (Klein), an employee of Southwest Community Mental Health Services. These sessions were held at the Health Services' clinic. Only Hart and Klein were present at these sessions, the first of which was taped.

On December 16, 1979, Hart was again hypnotized, this time at the police station in Tucson, Arizona by Harold E. Russell, a staff psychologist for the Tucson Police Department, and Walter R. Lindsay, an investigative consultant for law enforcement agencies. Archuleta and a New Mexico State police officer were also present during this session, which lasted forty-five minutes.

All four sessions were for the purpose of trying to aid the police in locating Platt's body. However, none of the sessions aided Hart in remembering where Platt's body had been left.

All the hypnotic sessions attempted to trace Hart's movements during the night of the incident. Facts of the incident were also discussed under hypnosis. In *State v. Beachum*, 97 N.M. 682, 643 P.2d 246 (Ct. App.1981), *cert. quashed*, 98 N.M. 51, 644 P.2d 1040 (1982), the Court of Appeals set forth for the first time in New Mexico, an explicit procedure to follow in administering a hypnotic session in order to introduce hypnotically refreshed testimony. The procedure set out in *State v. Beachum, supra,* was not followed in this case.

However, *State v. Beachum, supra,* makes a distinction between pre-hypnotic and post-hypnotic testimony.

*[T]estimony of prehypnotic recollections is admissible in the sound discretion of the trial court,* but post-hypnotic recollections, revived by the hypnosis procedure, are only admissible in a trial where a proper foundation has also first established the expertise of the hypnotist and that the techniques employed correctly performed, free from bias or improper suggestibility. [Emphasis added.]

*Id.* at 688, 643 P.2d at 252. Although *State v. Beachum, supra,* cites no authority for the above distinction between pre-hypnotic and post-hypnotic recollections, other jurisdictions have allowed pre-hypnotic testimony at the trial court's discretion without meeting the standards of a post-hypnotic procedure. *Pearson v. State,* Ind., 441 N.E.2d 468 (1982); *State v. Blanchard,* 315 N.W.2d 427 (Minn.1982); *See People v. Jackson,* 114 Mich.App. 649, 319 N.W.2d 613 (Ct.App.1982).

Therefore, because the testimony at trial was essentially the same as the statements made to Hart's attorney before hypnosis, we find that there was no error in the trial court's ruling to allow Hart to testify.

III. *Rebuttal Witness*

Hutchinson asserts that the trial court erred in ruling that George Schibley (Schibley) could testify as a rebuttal witness for the State. According to Schibley's deposition, Schibley met Hutchinson on December 13, 1979, while hitchhiking. The two traveled together until December 28, 1979. During this time, Schibley stated that Hutchinson gave him an account of the Platt incident.

On April 14, 1980, Schibley's affidavit and statement was given to Hutchinson's attorney. On May 1, 1980, Schibley's name appeared on the criminal information as a witness. On August 7, 1980, Schibley's name appeared on the State's witness list, however, no address was given. On August 25, 1980, Hutchinson moved for production of Schibley's psychiatric or psychological records. However, because Schibley was

out of the state at the time, the trial court held that it had no jurisdiction to order Schibley to release these records. On September 22, 1980, Hutchinson filed a motion to depose Schibley, as well as a motion for production of correspondence between the State and Schibley. Both motions were granted.

On January 9, 1981, at the pre-trial conference, Hutchinson stated that he had been unable to depose Schibley for logistical reasons. The trial court stated that if Schibley shows up, Hutchinson would be given time to interview Schibley prior to Schibley testifying. Hutchinson at that time stated that he may not even need that.

Schibley, a transient, had not been in contact with the State until January 8, 1981. On January 12, 1981, jury selection began and the State informed Hutchinson that Schibley was in town and that Hutchinson could speak to him. At this time, Hutchinson moved to exclude Schibley's testimony because of the State did not immediately bringing Schibley before the trial court in order that his deposition could be taken. The trial court stated that it would rule on the motion after Hutchinson had taken Schibley's deposition. On January 14, 1981, after jury selection had been completed, Hutchinson again raised the same objection because Schibley's statement had not been taken. The trial court, apparently surprised that the Schibley's deposition still had not been taken, arranged for a court reporter to be present at 5:00 p.m. that day; however, Schibley's statement was not taken until the following afternoon. After the deposition was taken, Hutchinson moved for a continuance to verify statements made by Schibley in his deposition, which the trial court denied. However, the trial court ruled that because the State knew Schibley was in town three days before informing Hutchinson, Schibley could not testify as a witness in the State's case in chief and that "[i]f the witness's testimony becomes relevant and he is sought to be offered as a rebuttal witness, the Court will rule at that time whether he would be a proper rebuttal witness." The State, however, decided not to call Schibley as a rebuttal witness; and he *never* testified at trial.

Hutchinson asserts that N.M.R.Crim.P. 27(a)(5) and 30, N.M.S.A.1978 (Repl.Pamp. 1980), were violated by the State. Rule 27(a)(5) states that:

[T]he state shall disclose or make available to the defendant:

\* \* \* \* \* \*

(5) A written list of the names and addresses of all witnesses which the prosecutor intends to call at the trial. \* \* \*

Rule 30(a) requires a continuous duty by the State to disclose the existence of additional material or witnesses, and Rule 30(b) specifies the remedies available for violating the Rule 30(a).

Hutchinson correctly asserts that no address was given for Schibley. However, because Schibley was a transient who moved around constantly, the State did not know where Schibley was until January 8, 1981. Therefore, there was no misconduct by the State in not listing an address for Schibley.

Hutchinson also claims misconduct by the State in not informing Hutchinson until January 12, 1981, that Schibley was in town. However, pursuant to Rule 30(b), the trial court applied an appropriate remedy for the State's action by not allowing Schibley to testify in the State's case in chief. Therefore, the trial court did not abuse its discretion in its ruling concerning Schibley as a rebuttal witness. N.M.R. Crim.P. 30.

Hutchinson next asserts that the trial court should have allowed Hutchinson a continuance to check the information Schibley gave in his deposition. The standard of review of a denial for a motion for continuance is whether the trial court abused its discretion to prejudice or injure the defendant. *State v. Perez*, 95 N.M. 262, 620 P.2d 1287 (1980); *State v. Smith*, 92 N.M. 533, 591 P.2d 664 (1979). Schibley was not a surprise witness; Hutchinson had information and statements of Schibley long before trial. Furthermore, at the beginning of the trial, both parties stated that

they were ready. Also, Schibley did not testify. Therefore, the trial court did not abuse its discretion in not granting a continuance.

Finally, Hutchinson asserts that by ruling that Schibley may have been able to testify on rebuttal, Hutchinson was forced to give up his right to take the stand in his own defense because Schibley would have been testifying after Hutchinson, and Hutchinson would have had no way of knowing what Schibley would say. Putting Hutchinson to a choice of retaining his privilege against self-incrimination or of waiving the privilege by taking the stand, is not a violation of the privilege against self-incrimination. *State v. Allen,* 91 N.M. 759, 581 P.2d 22 (Ct.App.), *cert. denied,* 91 N.M. 751, 580 P.2d 972 (1978). Counsel's decision not to call Hutchinson as a witness is a trial tactic and not a basis for relief. *State v. Gillihan,* 85 N.M. 514, 514 P.2d 33 (1973). Also, Hutchinson ignores the fact that he could testify again or present further evidence on sur-rebuttal. Therefore, Hutchinson's decision not to testify was his own tactical decision and cannot be a basis for relief.

## IV. *Identification of Hutchinson*

Hutchinson asserts that at no time during the trial did Hart or High, the only eye witnesses to the crime, identify Hutchinson as he sat in the courtroom, as the person responsible for the crimes charged. Nor did any other witness identify Hutchinson as the same individual whom Hart and High had testified about. Nor was there other evidence admitted, such as fingerprints, blood stains, hair samples, or articles belonging to Platt that would link Hutchinson to the crimes charged, other than Hart's and High's testimony.

After the State's case in chief, Hutchinson asked for a directed verdict for failure of the witnesses to identify Hutchinson as the defendant in this case. The trial court denied the motion stating that there was "sufficient evidence to establish a prima facie case, evidence from which reasonable inference could be drawn as to the elements of the crime charged."

In the present case, during Hart's and High's testimony, Hutchinson was referred to as "the Defendant, Terry Wayne Hutchinson", "Terry Hutchinson", "Terry", "The Defendant" or "Wolf" (Hutchinson's nickname). A witness does not have to physically point out a defendant in a courtroom, because identification by name is enough. *Murphy v. State,* 47 Md. App. 387, 422 A.2d 1297 (Ct.Spec.App.1980). This is true so long as the evidence is sufficient to permit the inference that the person on trial was the person who committed the crime. *United States v. Darrell,* 629 F.2d 1089 (5th Cir.1980); *Delegal v. United States,* 329 F.2d 494 (5th Cir.), *cert. denied,* 379 U.S. 821, 85 S.Ct. 44, 13 L.Ed.2d 32 (1964); *Griffin v. United States,* 329 F.2d 495 (5th Cir.), *cert. denied,* 379 U.S. 822, 85 S.Ct. 44, 13 L.Ed.2d 32 (1964); *Ivester v. State,* 398 So.2d 926 (Fla.Dist.Ct.App.1981), *cert. denied,* 412 So.2d 470 (Fla.1982). In determining whether the evidence supports a criminal charge or an essential element thereof, the appellate court must view the evidence in a light most favorable to the verdict, resolving all conflicts therein and indulging all permissible inferences in favor of the verdict of conviction. *State v. Lankford,* 92 N.M. 1, 582 P.2d 378 (1978). We have reviewed the transcript and uphold the trial court's ruling that there was sufficient inferences identifying Hutchinson to permit the jury to draw the inference that the person on trial was the one who committed the crimes.

## V. *Intent*

The criminal information charged Hutchinson with kidnapping by taking and confining Platt by force with intent that she be held to service against her will. § 30–4–1(A)(3), N.M.S.A.1978. Hutchinson contends that the evidence presented at trial fails to establish that at the time the kidnapping occurred, the intent to hold for service was present.

Kidnapping is defined as the "unlawful taking, restraining or confining

of a person, by force or deception. * * *." § 30–4–1(A). Kidnapping which involves the detention of another, is a continuous offense. *State v. Zimmer,* 198 Kan. 479, 426 P.2d 267, *cert. denied,* 389 U.S. 933, 88 S.Ct. 298, 19 L.Ed.2d 286 (1967). The offense continues until the victim has been released from confinement. *Id.; People v. Behm,* 45 Mich.App. 614, 207 N.W.2d 200 (Ct.App.1973), *rev'd on other grounds,* 52 Mich.App. 119, 216 N.W.2d 631 (Ct.App. 1974). Acts and deeds that emanate from the kidnapping become a part of the act as long as the kidnapping continues. *People v. Behm, supra.* A conviction for kidnapping with the intent to hold for services is sufficient if the kidnapper rapes the victim during the course of the abduction. It is immaterial whether or not the intent to rape existed at the beginning of the act. *See People v. Brown,* 29 Cal.2d 555, 176 P.2d 929 (1947).

The necessary intent may be inferred from the acts of an accused. *Jensen v. Sheriff, White Pine County,* 89 Nev. 123, 508 P.2d 4 (1973); *see State v. Kendall,* 90 N.M. 236, 561 P.2d 935 (Ct.App.), *modified,* 90 N.M. 191, 561 P.2d 464 (1977). Intent, as an element of a crime, is seldom susceptible of proof by direct evidence, and it may be inferred from a series of acts, occurrences and circumstances. *State v. Clark,* 80 N.M. 340, 455 P.2d 844 (1969); *Jensen v. Sheriff, White Pine County, supra.* As we stated before, the intent to rape does not have to occur at the beginning of the act, it is sufficient if the rape occurs during the course of the confinement.

We review evidence in the light most favorable to the State and resolve all conflicts and indulge all reasonable inferences in favor of the verdict. *State v. Crump,* 82 N.M. 487, 484 P.2d 329 (1971). Therefore, we find that there was sufficient evidence to support the jury verdict that required the State to prove that Hutchinson kidnapped Platt with intent to hold to service against her will. Hutchinson's conviction of kidnapping in the first degree is affirmed.

## VI. *Felony Murder*

Hutchinson asserts that if there is not sufficient evidence to sustain the conviction for kidnapping, then the conviction for felony murder must also fail. The criminal information stated that Hutchinson "did murder Linda Lorraine Platt in the commission of a felony, to wit: kidnapping." § 30–2–1(A)(2), N.M.S.A.1978 (Cum.Supp. 1982).

This point is premised upon a reversal of the underlying kidnapping charge. We need not address this issue because Hutchinson's kidnapping conviction is upheld.

## VII. *Wedding Photograph*

Hutchinson asserts that the admission of a wedding photograph of Platt and her husband that shows Platt's wedding rings, was prejudicial. The State argues that the photograph was admissible as foundation for the admission of the wedding rings to prove Platt's identity.

When the police recovered Platt's body six months after the killing, the forensic pathologist testified that the body was in an advanced stage of decomposition. Two rings were found on the body. Platt's husband testified that the rings were very similar to his wife's wedding rings. The trial court allowed the photograph showing the rings into evidence for the purpose of proving the identity of the body, by comparing the rings.

Photographs are relevant and admissible for the purpose of clarifying and illustrating testimony. *State v. Upton,* 60 N.M. 205, 290 P.2d 440 (1955). Such evidence constitutes visual explanations of a witness' testimony and as corroboration of that testimony. *State v. Carlton,* 83 N.M. 644, 495 P.2d 1091 (Ct.App.), *cert. denied,* 83 N.M. 631, 495 P.2d 1078 (1972). We find that the photograph was reasonably relevant to the issue of the identification of Platt's body.

The issue of whether the photograph raised the passions and prejudices of the jury is largely one of discretion to be

exercised by the trial court. *State v. Webb,* 81 N.M. 508, 469 P.2d 153 (Ct.App.1970). We have held that:

Photographs which are calculated to arouse the prejudices and passions of the jury and which are not reasonably relevant to the issue of the case ought to be excluded.

*State v. Upton, supra,* at 209, 290 P.2d at 442. Since we find that the photograph was relevant, we will not disturb the decision of the trial court unless there is an abuse of that discretion. *State v. Baros,* 87 N.M. 49, 529 P.2d 275 (Ct.App.), *cert. denied,* 87 N.M. 47, 529 P.2d 273 (1974); *State v. Webb, supra.* We find no abuse.

 Hutchinson also asserts that the photograph was unnecessary and cumulative, since "the State can have other people identify the ring[s]." The fact that a photograph is cumulative or repetitious does not, in and of itself, make it inadmissible as long as it is reasonably relevant to the issues of the case. *State v. Trujillo,* 84 N.M. 593, 506 P.2d 337 (Ct.App.1973). Photographs are properly admitted if they serve to corroborate other evidence even though they may be cumulative. *State v. Sedillo,* 76 N.M. 273, 414 P.2d 500 (1966). Therefore, although the photograph may be cumulative, it was properly admitted.

VIII. *Cumulative Misconduct*

Hutchinson asserts that the cumulative misconduct by the State denied Hutchinson a fair trial. We have found no misconduct by the State.

The judgment and sentence of the trial court is affirmed.

FEDERICI and STOWERS, JJ., concur.