688 P.2d 769

STATE of New Mexico,
Plaintiff-Appellee,

v.

Walter Scott FINNELL,
Defendant-Appellant.

No. 13991.

Supreme Court of New Mexico.

June 6, 1984.

Rehearing Denied June 27, 1984.

Sarah M. Singleton, Santa Fe, Palmer Singleton, Washington, D.C., for defendant-appellant.

Paul Bardacke, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

STOWERS, Justice.

Defendant Walter Scott Finnell was tried by jury and convicted in the District Court of Grant County of first degree murder of Richard Bejarano, attempted murder of Karen Bejarano with firearm enhancement, armed robbery with firearm enhancement, and motor vehicle theft with firearm enhancement. For the murder of Richard Bejarano, the jury, pursuant to NMSA 1978, Section 31–20A–5(G) (Repl.Pamp. 1981), found the aggravating circumstance of killing a witness. The jury unanimously agreed that defendant be sentenced to death for the first degree murder. Defendant was also sentenced to ten years on the count of attempted murder, ten years on the armed robbery, and two and a half years on the car theft. These sentences were to be served concurrently with each other, but consecutively to the sentence under the murder verdict.

We affirm defendant's conviction on all charges. However, because of errors in the sentencing phase of the trial, we reverse and remand the case for a new sentencing proceeding only as to the conviction for first degree murder, pursuant to NMSA 1978, Section 31–20A–4 (Repl.Pamp. 1981).

### Sentencing Jury Selection

Defendant contends that it was error to exclude for cause those jurors who, following the guilt phase of the trial, stated that, although not unequivocally opposed to the death penalty, they were convinced that

defendant should not be sentenced to death. Defendant asserts that this violated his constitutional right to a fair and impartial jury. Defendant argues that the death sentence is invalid because the exclusion resulted in a sentencing jury uncommonly willing to impose the death penalty, contrary to the Sixth and Fourteenth Amendment right to an impartial jury.

Rather than conducting *voir dire* on the death penalty at the beginning of the trial as is properly done, examination of the jurors regarding the death penalty was postponed until after trial on the merits. Defendant had filed a pre-trial motion to limit initial *voir dire* of the jury. Prior to trial, defendant and the prosecution entered into a stipulation agreeing to no death penalty *voir dire* or mention of the death penalty during the guilt phase of the trial. The trial court accepted this stipulation. Twelve jurors and six alternates were then selected.

On *voir dire* during the penalty phase, the trial court first asked the jurors if they were opposed to the death penalty. Second it asked if the juror, regardless of the facts and circumstances which have been presented by the evidence during the trial and which may be presented during the sentencing proceeding, would automatically refuse to vote for the sentence of death. *See* NMSA 1978, UJI Crim. 1.10 (Repl. Pamp.1982). Those jurors who expressed opposition were examined further to determine if any of them should be stricken for cause.

Of the eighteen jurors and alternates questioned, eight initially answered yes to both questions. Defendant then requested the trial court to dismiss the penalty portion of the case because eight of the original trial jurors were not death qualified, leaving only ten jurors, including the alternates. Defendant would not stipulate to a ten-person jury or the calling of new jurors. The prosecutor requested leave to conduct further *voir dire*. The trial court limited the *voir dire* to those who indicated they had opposition to the death penalty. The trial court also agreed to defendant's

request to *voir dire* the death qualified jurors to determine if any of them would automatically impose the death penalty in every case.

In subsequent *voir dire,* one juror was stricken for cause because of her unequivocal opposition to the death penalty on religious grounds. Three jurors were excused for cause after indicating that although there were circumstances in which they would impose the death penalty, based on the evidence at trial, they could not sentence defendant to death, regardless of the evidence presented in the sentencing phase. Two jurors were excused by the court for cause at defendant's request because they indicated that their minds were already made up on this case. The sentencing jury consisted of six jurors who had originally deliberated defendant's guilt and the six alternates.

The Capital Felony Sentencing Act, NMSA 1978, Sections 31–20A–1 to –6 (Repl. Pamp.1981), provides for sentencing in capital cases. Section 31–20A–1(B) provides in pertinent part:

> In a jury trial, the sentencing proceeding shall be conducted as soon as practicable by the original trial judge before the original trial jury.

This did not occur in the present case. The sentencing proceeding was conducted before six of the original trial jurors and the six alternates. *The stipulation which was entered into violated the procedures set forth by the Legislature for capital felony sentencing, and should never have been permitted.* The result was to create a confusing situation. In cases decided subsequent to defendant's trial, this Court has pointed out the potential problems with utilizing this method of jury selection. *See State v. Simonson,* 100 N.M. 297, 669 P.2d 1092 (1983); *State v. Hutchinson,* 99 N.M. 616, 661 P.2d 1315 (1983).

In this case, defendant was not sentenced by the original trial jury which found him guilty as required by Section 31–20A–1(B). Therefore, we are remanding this case for a new sentencing proceeding on the first degree murder conviction,

pursuant to Section 31–20A–4(E), which provides in relevant part:

In cases of remand for a new sentencing proceeding, all exhibits and a transcript of all testimony and other evidence admitted in the prior trial and sentencing proceeding shall be admissible in the new sentencing proceeding, and:

(1) if the sentencing proceeding was before a jury, a new jury shall be impaneled for the new sentencing proceeding.

## Witness Killing

Defendant filed a motion to preclude the imposition of the death penalty arguing that Mr. Bejarano was not a witness as contemplated by NMSA 1978, Section 31–20A–5(G) (Repl.Pamp.1981). A stipulation of facts was presented to the trial court for the motion hearing. After the hearing, the trial court ruled that it was going to deny the motion to preclude the imposition of the death penalty.

Defendant argues that Mr. Bejarano was not a witness within the meaning of Section 31–20A–5(G). Defendant contends that the trial court extended Section 31–20A–5(G) in a manner that would make the death penalty applicable whenever an intentional killing occurs in the course of any felony or misdemeanor. Defendant also asserts that the evidence was insufficient to support the jury's finding that Mr. Bejarano was a witness to a crime, resulting in a charge of the aggravating circumstance.

■ The court sentencing procedure is provided in NMSA 1978, Section 31–20A–3 (Repl.Pamp.1981), which states in relevant part:

In a jury sentencing proceeding in which the jury unanimously finds beyond a reasonable doubt and specifies at least one of the aggravating circumstances enumerated in * * * this act, and unanimously specifies the sentence of death * * * the court shall sentence the defendant to death.

This provision clearly states that the jury must find whether the aggravating circumstance exists. *See also* NMSA 1978, UJI Crim. 39.10, 39.13, 39.20, 39.31, 39.32, and 39.33 (Repl.Pamp.1982). Because we are remanding this case for a new sentencing hearing, it will be up to the jury to first determine whether the aggravating circumstance exists.

## Errors by the Prosecution and the Trial Court

Defendant first argues that the prosecution's argument during the sentencing phase of the trial was inflammatory and prevented consideration of the proper statutory mitigating and aggravating circumstances. Second, defendant argues that the ambiguity of the jury instructions concerning the weighing of aggravating and mitigating circumstances undermines the reliability of the jury's imposition of the death sentence. Third, defendant argues that the trial court's refusal to strike a juror who said he thought the defendant should testify and then permitting that juror to sit on the sentencing phase jury undermines the reliability of the death penalty. Because of our remand for a new sentencing hearing, it is unnecessary for us to address the first and third points raised by the defendant.

■ The Capital Felony Sentencing Act requires that aggravating and mitigating circumstances be weighed against each other to determine whether a life or death sentence is appropriate. NMSA 1978, § 31–20A–2(B) (Repl.Pamp.1981). This Court has adopted uniform jury instructions which explain the death penalty sentencing proceeding. *See* NMSA 1978, UJI Crim. 39.10 to .43 (Repl.Pamp.1982). These instructions explain to the jury the statutory requirements for imposition, set forth the applicable matters for jury consideration, limit the jury's consideration to those specific matters, and guide the jury's discretion.

Relying on *State v. Wood*, 648 P.2d 71, 77–85 (Utah), *cert. denied*, 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982), defendant argues that principles of statutory construction require that the death penalty be limited to instances where the jury is

persuaded beyond a reasonable doubt that aggravating circumstances outweigh mitigating factors. However, *Wood* is inapplicable to the present case because it dealt with a statute that provided no burden of proof, persuasion, or even required that a comparison be made between the aggravating and mitigating factors. *Id.* at 79, fn. 4.

The United States Supreme Court has never stated that a beyond a reasonable doubt standard is required when determining whether a death penalty should be imposed. There is no requirement in the Capital Felony Sentencing Act or in the jury instructions which requires that the aggravating circumstances outweigh the mitigating circumstances beyond a reasonable doubt. If the Legislature had intended for this burden to be beyond a reasonable doubt in death penalty cases, it would have stated so in the Capital Felony Sentencing Act. The jury instructions adopted by this Court give the jury the guidance they need in order to determine whether the death sentence is appropriate.

### Aggravating v. Mitigating Circumstances

Defendant contends that because the evidence shows that he was a young man with no significant history of prior criminal activity and a significant history of mental disorder and emotional problems, acting under duress, that the mitigating circumstances outweigh the aggravating circumstances. Therefore, he argues that this Court is required to vacate the death sentence. However, in light of our remand of this case for a new sentencing hearing, we find it unnecessary to address this issue at this time.

### Systematic Review and Proportionality

Defendant argues that effective appellate review of the excessiveness of a death sentence is constitutionally required, and that the lack of a systematic review procedure prohibits imposition of death in this case. Alternatively, defendant contends that the sentence of death in this case is disproportionate to the sentences given others convicted of similar crimes who have fewer mitigating circumstances. In view

of our remand for a new sentencing proceeding, we find it unnecessary to address this issue. We note, however, that in *State v. Garcia*, 99 N.M. 771, 664 P.2d 969, *cert. denied*, —— U.S. ——, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983), this Court set forth the guidelines for proportionality review. We continue to adhere to that procedure.

### Constitutionality of the Death Penalty

Defendant asserts that the death penalty is cruel and unusual punishment, applied arbitrarily and capriciously in violation of the state and federal Constitutions. We discussed this challenge to the death penalty in *State v. Garcia*, 99 N.M. 771, 664 P.2d 969, *cert. denied*, —— U.S. ——, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983). We continue to hold that the death penalty, in and of itself, does not violate federal or state constitutional mandates against cruel and unusual punishment.

### Duress Instruction

Defendant requested an instruction which would have informed the jury that if he was forced to kill Richard Bejarano under threats against his life, he was not guilty. The instruction was denied. As to both murder and attempted murder, the trial court instructed that acting under threat was no defense. Defendant failed to object to these instructions. On appeal, defendant urges that the refusal to give a duress instruction was error.

Two forms of NMSA 1978, UJI Crim. 41.21 (Repl.Pamp.1982) were given by the trial court:

Evidence has been presented that the defendant killed RICHARD NATHAN BEJARANO under a threat of death or great bodily harm from Charles Ralph Cobb. The fact that the defendant may have acted under a threat from another is no defense to an intentional killing of an innocent person. [Instruction No. 4.]

Evidence has been presented that the defendant intended to kill KAREN BEJARANO under a threat of death or great bodily harm from Charles Ralph Cobb. The fact that the defendant may

have acted under a threat from another is no defense to an attempted killing of an innocent person. [Instruction No. 6.] The trial court submitted the correct instructions to the jury. The duress defense has traditionally been refused for homicide. *See Jackson v. State,* 558 S.W.2d 816 (Mo. App.1977); *State v. Toscano,* 74 N.J. 421, 378 A.2d 755 (1977). We agree with the court's reasoning in *Jackson,* which reiterated that the common law has steadfastly refused to recognize any compulsion, even the threat of death, as sufficient to excuse taking the life of another. The *Jackson* court noted that:

> Legal recognition of duress as a defense to crimes other than homicide necessarily assumes a working hypothesis that a harm or crime of greater magnitude is avoided when the subjected person succumbs to the duress. This hypothesis disappears when duress is sought to be invoked as a defense in a homicide case.

558 S.W.2d at 820. This analysis in *Jackson* was cited with approval in *Wright v. State,* 402 So.2d 493 (Fla.App.1981). The *Wright* court stated:

> The rationale is sound. The paucity of cases which have addressed the issue is, hopefully, a reflection that the rule that duress will never justify the killing of an innocent third party accords with the mores of our society. We unhesitatingly adopt the rule that duress is not a defense to an intentional homicide.

*Id.* at 498 (footnote omitted.) Other states have also rejected the duress defense in a homicide context either on the basis of common law or statute. *See State v. Encinas,* 132 Ariz. 493, 647 P.2d 624 (1982) (duress barred by statute as defense to either felony murder or premeditated murder); *State v. Brock,* 305 N.C. 532, 290 S.E.2d 566 (1982) (no degree of duress is sufficient at common law to excuse the intentional killing of an innocent person); *State v. Robinson,* 622 S.W.2d 62 (Tenn.Cr. App.), (reaffirming established case law that duress is not a defense to homicide) *appeal dismissed,* 454 U.S. 1096, 102 S.Ct. 667, 70 L.Ed.2d 636 (1981). We agree with

the rationale of these cases, and reaffirm the traditional common law doctrine that duress is not a defense to homicide. The trial court was correct in refusing defendant's jury instruction. We find no error in this regard.

### Exhibition of Bloody Clothing

Defendant argues that a mistrial should have been declared when the prosecutor exhibited bloody clothing to the jury during the testimony of an already sobbing witness. The witness, Karen Bejarano, was the wife of the victim, and had been shot during the robbery. Defendant asserts that there was little, if any, probative value to the exhibits because the nature of Karen Bejarano's wounds had been fully described. Therefore, defendant contends that the only possible value of the evidence was to arouse the passion of the jury by showing them gore and an hysterical witness.

■■■ We have reviewed the record and find that the refusal to grant a mistrial because of this incident was a sound and proper exercise of the trial court's discretion. The record does not show that the witness, Karen Bejarano, was crying or hysterical at the time that she was shown the exhibit. Defendant did not establish that the evidence was introduced solely to arouse the passion of the jury. Moreover, defendant did not show that any prejudice resulted from the introduction of the evidence. *See State v. Perez,* 95 N.M. 262, 620 P.2d 1287 (1980). Abuse of discretion must be shown and will not be presumed. *State v. Greene,* 92 N.M. 347, 588 P.2d 548 (1978). The trial court did not abuse its discretion by refusing to grant a mistrial.

### Defendant's Statement

Defendant contends that a statement made after an inadequate advice of *Miranda* rights should have been suppressed. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Arizona Highway Patrol engaged the defendant and an accomplice in a high speed chase over a gravel road. Another law enforcement vehicle approached defend-

738

ant's vehicle from the front and there was a head-on collision. The suspects began running across the desert while being chased by police officers. When they were apprehended, an officer read the suspects their *Miranda* rights. Subsequently at the jail, another officer asked defendant if he had been advised of his rights and if he understood them. The officer then asked defendant what happened. Defendant said that he wanted to cooperate and help. Defendant subsequently stipulated that he had received a complete, proper advice of rights from the first officer.

 Our review of the record shows that the trial court did not abuse its discretion by allowing such admission. *See State v. Greene,* 92 N.M. 347, 588 P.2d 548 (1978). However, even assuming defendant's statement was inadmissible, the evidence of defendant's guilt in this case was overwhelming. The statements in question contributed nothing to defendant's conviction. Any error in their admission was harmless beyond a reasonable doubt. *State v. Trujillo,* 95 N.M. 535, 624 P.2d 44 (1981); *see also State v. Moore,* 94 N.M. 503, 612 P.2d 1314 (1980).

### Conclusion

Defendant's conviction on all charges is affirmed. This case is remanded to the trial court for a new sentencing proceeding as to the first degree murder conviction pursuant to NMSA 1978, Section 31–20A–4 (Repl.Pamp.1981).

IT IS SO ORDERED.

FEDERICI, C.J., and RIORDAN, J., concur.

SOSA, Senior Justice, and WALTERS, J., specially concurring.

SOSA, Senior Justice, specially concurring.

I specially concur with the remand for a new sentencing proceeding for the reasons stated, and specially concur in the majority opinion except as to the constitutionality of the death penalty for the reasons set forth in my dissent in *State v. Garcia,* 99 N.M. 771, 664 P.2d 969, *cert. denied,* — U.S.

——, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983), which I feel adequately sets forth my reasons for believing that equally culpable people can be treated differently by sentencing juries in this state.

WALTERS, Justice (specially concurring).

Section 31–20A–4(D), NMSA 1978, provides that if there is error in sentencing, the reviewing court shall remand solely for a new sentencing proceeding, and that the resentencing trial may be presented to a new jury panel. In my view, the statute creates an incongruous situation, in view of the mandatory language of Section 31–20A–1(B) and our decisions in *Simonson* and *Hutchinson.* However, because both parties agreed to the irregular procedure followed below, I concur in the result reached in this case.