This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                      **NO. A-1-CA-35217**

**DANIEL KESSLER,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter M. Hart, III, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM
MJ Edge, Assistant Appellate Defender
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**VANZI, Chief Judge.**

**{1}** The State appeals the district court's November 23, 2015 order granting Defendant Daniel Kessler's motion to exclude, claiming that exclusion of the State's witness was an abuse of discretion under the circumstances. We hold that the district court did not abuse its discretion by excluding the witness.

**BACKGROUND**

**{2}** Defendant was indicted for trafficking methamphetamine on January 19, 2012, and arraigned on February 3, 2012. On February 16, 2012, the State filed a notice of intent to call witnesses, listing four chemists who worked for Albuquerque Police Department (APD), one of whom was Guy Walton. The notice did not contain any contact information for the chemists. On December 2, 2013, the State filed an amended notice of intent to call witnesses that listed three of the four chemists, but not Mr. Walton. The amended notice did not provide any contact information for the chemists.

**{3}** The case was delayed for a significant period due to Defendant's failure to appear from August 15, 2014, until July 12, 2015. During that period, the case was reassigned to the Honorable Jacqueline Flores and became subject to the case management requirements of the Second Judicial District Court's special calendar rule, *see* LR2-400.1(A)-(B) NMRA (recompiled and amended as LR2-308 NMRA), which required the district court to sanction parties for discovery violations. *See* LR2-400.1(D)(4). On July 20, 2015, the State filed another

amended notice of intent to call witnesses, listing Mr. Walton as the only chemist. The notice stated, "[Mr. Walton is] believed to be retired at this time, contact information not presently known[.]" That same day, the State filed a notice of status of the case, which stated, "If the State cannot get in contact with [Mr. Walton], the State will retest the drugs." On August 12, 2015, the court issued a scheduling order setting Defendant's deadline for pretrial witness interviews for October 23, 2015, and trial for November 30, 2015.

{4}   On November 2, 2015, Defendant filed a motion to exclude the State's chemists, claiming that he could not conduct pretrial interviews with them because the State never provided Mr. Walton's contact information, in violation of LR2-400.1(D), or had any of the other chemists retest the alleged drugs. Defense counsel claimed that "[b]ecause of the inability to locate [Mr.] Walton to issue a subpoena for, or conduct a pretrial interview, undersigned counsel cannot provide effective assistance of counsel and [D]efendant cannot know all issues that need to be raised by motion." Additionally, defense counsel claimed that she could not "perform effective follow-up defense investigation without interviewing the above-[S]tate witnesses." In response, the State admitted that the alleged drugs had not been retested by the other chemists but claimed that it did not violate LR2-400.1(D) because it did not have a current address for Mr. Walton after he retired. The State also pointed out that Defendant never responded to the State's August

3

17, 2015 email in which the State accepted responsibility for arranging pretrial interviews and asked Defendant if he wanted to interview any of the State's witnesses. The court held a hearing on the motion on November 17, 2015. At the hearing, the State again argued that it did not violate any rules because it did not have any contact information to provide for Mr. Walton. The State explained that it asked other prosecutors if they knew where Mr. Walton was when the State filed its latest witness list, but none of the other prosecutors had his contact information. However, the State admitted that other prosecutors were able to contact Mr. Walton successfully in the past. The State also admitted that it could have located him but chose not to because Defendant never requested a pretrial interview. The district court pointed out that the rules of discovery required the State to provide Mr. Walton's address on its witness list. After the State told the court that it had the capability and resources to assign an investigator to find Mr. Walton when it filed its witness lists, the district court excluded the witness without further discussion. The court did not explain its decision to exclude the witnesses or mention any consideration of the factors identified in *State v. Harper*, 2011-NMSC-044, ¶¶ 16-20, 150 N.M. 745, 266 P.3d 25, i.e., the culpability of the State, prejudice to Defendant or the court, or the availability of lesser sanctions.

{5}     The court subsequently entered an order granting Defendant's motion to exclude, which stated,

4

> The Court finds that the State was in violation of LR2-400.1 . . . by not ascertaining the current contact information of chemist Guy Walton and including this in State's Witness List.
>
> IT IS THEREFORE ORDERED that Defendant's Motion to Exclude Witnesses is well-taken, and Guy Walton's testimony is excluded from trial.

The court did not discuss the *Harper* factors or explain its decision to exclude in its order. This appeal followed.

{6}     On April 27, 2017, our Supreme Court decided *State v. Le Mier*, 2017-NMSC-017, 394 P.3d 959. Given *Le Mier*'s holding that "[c]ourts must evaluate the considerations identified in *Harper*—culpability, prejudice, and lesser sanctions—when deciding whether to exclude a witness and must explain their decision to exclude or not to exclude a witness within the framework articulated in *Harper*," *Le Mier*, 2017-NMSC-017, ¶ 20, and given that *Le Mier* was decided after the district court's decision, we remanded this case "for the limited purpose of allowing the [district] court to provide a written explanation of its decision to exclude the witnesses within the framework articulated in *Harper*, as clarified by *Le Mier*."

{7}     In response to our order for limited remand, the district court entered an order with specific findings regarding the circumstances surrounding its decision to exclude the State's witnesses, which generally included the factual background described above and which we discuss in more detail below. In its order, the

district court explained that it was operating under the strict timelines and requirements of LR2-400.1, which required it to impose sanctions for failure to comply with discovery obligations. To this end, the district court found,

> The State violated . . . [LR2-400.1] when, despite having ample time and the ability and resources to provide defense with the contact information for the witness, the State failed to do so and provided no reason why, in the three years this case was pending, the contact information could not be provided or interviews scheduled before the deadline.

The court also found that the State's failure "resulted, at the very least, in Defendant's inability to interview a key witness." Given these facts, the district court concluded that exclusion of the witnesses was the most appropriate sanction.

**DISCUSSION**

{8}	As this case was filed before June 30, 2014, it was subject to the Second Judicial District Court's special calendar rule. *See* LR2-400.1(A), (B). The rule requires parties to "disclose or make available all discovery described in Rule 5-501(A)(1)-(6) NMRA" no later than February 12, 2015, if not already disclosed. LR2-400.1(D). Rule 5-501(A)(5) provides that the state shall disclose or make available to the defendant "a written list of the names and addresses of all witnesses which the prosecutor intends to call at the trial[.]" The parties also have "a continuing duty to disclose additional information within five (5) days of receipt of such information." LR2-400.1(D)(2). Should either party fail to comply with these discovery requirements, the district court "shall impose sanctions, which may

6

include dismissal of the case with or without prejudice, prohibiting the party from calling a witness or introducing evidence, monetary sanctions . . . , or any other sanction deemed appropriate by the court." LR2-400.1(D)(4).

{9}     While LR2-400.1(D)(4) makes sanctions mandatory for discovery violations, it provides the district court with discretion regarding the type of sanction to impose. We review the district court's imposition of sanctions for an abuse of discretion. *See Le Mier*, 2017-NMSC-017, ¶ 22. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). "In reviewing the district court's decision, [appellate courts] view[] the evidence—and all inferences to be drawn from the evidence—in the light most favorable to the district court's decision." *Id.* To determine whether the imposition of severe sanctions, such as exclusion of a witness, is proper, courts look at "(1) the culpability of the offending party, (2) the prejudice to the adversely affected party, and (3) the availability of lesser sanctions." *Id.* ¶ 15. However, "*Harper* did not establish a rigid and mechanical analytic framework. Nor did *Harper* embrace standards so rigorous that courts may impose witness exclusion only in response to discovery violations that are egregious, blatant, and an affront to their authority." *Le Mier*, 2017-NMSC-017, ¶ 16. Thus, "it is not the case that witness exclusion is

justified only if all of the *Harper* considerations weigh in favor of exclusion." *Le Mier*, 2017-NMSC-017, ¶ 20.

{10} As an initial matter, we must determine whether the State violated Rule 5-501(A)(5), and consequently LR2-400.1. The State argues that it did not violate Rule 5-501(A)(5) by failing to disclose Mr. Walton's address on its witness lists because it did not know his address. We disagree. It is undisputed that the State never provided an address for Mr. Walton. However, Rule 5-501(A)(5) clearly requires the state to disclose or make available to defendants "a written list of the names *and addresses* of all witnesses which the prosecutor intends to call at the trial[.]" (Emphasis added); *see also Le Mier*, 2017-NMSC-017, ¶ 23 (holding that the state violated Rule 5-501(A)(5) by failing to provide a correct address for its witness). Unlike some other discovery rules, Rule 5-501(A)(5) does not condition the provision of witness addresses on their availability to the prosecutor. *Compare* Rule 5-501(A)(5), *with* LR2-400.1(D) ("In addition to the disclosures required in Rule 5-501(A) . . . , the parties shall also provide phone numbers and e-mail addresses of all witnesses *if available*[.]" (emphasis added)).

{11} The State argues that case law supports its position that the State is not obligated to provide addresses for its witnesses when it does not have that information. In support of this proposition, the State cites *State v. Hutchinson*, 1983-NMSC-029, 99 N.M. 616, 661 P.2d 1315; *State v. Lopez*, 2018-NMCA-002,

8

410 P.3d 226; *State v. McDaniel*, 2004-NMCA-022, 135 N.M. 84, 84 P.3d 701; and *State v. Ewing*, 1982-NMCA-030, 97 N.M. 484, 641 P.2d 515. However, none of these cases addresses whether the State is required to provide addresses for its witnesses when it has the ability to locate them. *See Hutchinson*, 1983-NMSC-029, ¶ 24 (holding that there was no misconduct when the state failed to provide an address for a transient witness who moved around constantly); *Lopez*, 2018-NMCA-002, ¶ 25 (holding that the state did not act in bad faith by not providing an up-to-date address for its witness when the witness was found less than two days before trial despite the state searching for him); *McDaniel*, 2004-NMCA-022 ¶¶ 5, 10 (holding that the state did not breach its duty to disclose a witness and her address when it did not locate and interview her until the day before trial); *Ewing*, 1982-NMCA-030, ¶¶ 4, 6 (holding that the state did not commit a discovery violation when it failed to provide a current address for its witness that "disappeared" until three days before trial). Unlike these cases, the State, here, told the court that it could have located Mr. Walton if it assigned an investigator, which it had the resources to do throughout the discovery period, but it chose not to. Therefore, the State's reliance on these cases is misplaced.

{12}    The State argues that forcing it to provide correct addresses for all of its witnesses at the time it files its initial witness list early in the case would result in a waste of prosecutorial resources by forcing the State to assign investigators to find

9

witnesses that neither party may ultimately desire to interview or use at trial. However, this is not the case where the district court sanctioned the State for failing to provide a witness address in the preliminary stages of discovery. To the contrary, this case had been pending for more than three and a half years, and the State had known for almost four months that Mr. Walton left APD before the court excluded him. We understand that it may take parties more time to locate a witness than the rules of discovery allow. *See Le Mier*, 2017-NMSC-017, ¶ 23 ("It is understandable that in certain circumstances locating a witness's correct address may take more time than the rule allows."). Nonetheless, the State is under an obligation under Rule 5-501(A)(5) to provide correct addresses for the witnesses it intends to call at trial, and the State failed to do so despite having ample time.

{13} Having determined that the State violated Rule 5-501(A)(5), and consequently LR2-400.1(D), we now turn to whether the district court abused its discretion in sanctioning the State by excluding Mr. Walton. The State contends that the district court abused its discretion by imposing the sanction of exclusion without adequately considering the *Harper* factors. While it is true that the district court did not discuss the *Harper* factors in its original order granting Defendant's motion to exclude, it issued a detailed order upon limited remand that included specific findings regarding the State's discovery violation. We conclude that this

10

order provides us with an adequately developed record for us to substantively review for consideration of the *Harper* factors, which we do so now.

**{14}** With respect to the first *Harper* factor, the culpability of the offending party, we note the following facts, which the district court considered upon limited remand in making its determination that witness exclusion was the appropriate sanction. The State accepted responsibility for locating Mr. Walton and arranging witness interviews. At the same time, the State never provided any contact information for Mr. Walton, in violation of Rule 5-501(A)(5), a basic discovery rule. While the State told the court that the other prosecutors it asked did not know where Mr. Walton was when it filed its witness list in July, it admitted that other prosecutors had been able to locate him in the past. Indeed, the State admitted it had the ability and resources to find Mr. Walton, but it chose not to assign an investigator to find him. Given these facts, we cannot say that the district court finding the State culpable was an abuse of discretion. *Cf. Le Mier*, 2017-NMSC-017, ¶ 24 ("[A] single violation of a discovery order may suffice to support a finding of culpability.").

**{15}** With respect to the second *Harper* factor, prejudice to the adversely affected party, *Le Mier* explains that any discovery violation necessarily involves some amount of prejudice to the defendant and the court. *See Le Mier*, 2017-NMSC-017, ¶ 25 ("When a court orders a party to provide discovery within a given time frame,

11

failure to comply with that order causes prejudice both to the opposing party and to the court."). The State argues that Defendant could not have been prejudiced because it never asked to interview Mr. Walton. However, as the district court noted in its order on limited remand, it was not Defendant's responsibility to ensure the State's compliance with its discovery obligations. *Cf. State v. Cazares*, 2018-NMCA-012, ¶ 15, 409 P.3d 978 ("The [s]tate neither has the authority, nor is in a position to delegate its responsibility to follow the clear and unambiguous scheduling order issued by the district court."). The State failed to provide any contact information for Mr. Walton, and the district court found that Defendant had no means to independently contact or subpoena a key witness before the pretrial interview deadline. Moreover, the State's failure to comply with its discovery obligation prejudiced the court by requiring it to dedicate its time and resources to the needless and wasteful task of ensuring compliance with basic discovery rules. *See Le Mier*, 2017-NMSC-017, ¶ 26 ("The State's inability to provide . . . correct witness addresses required the court to dedicate its time and resources to a needless and wasteful cause: ensuring compliance with basic discovery rules and orders. . . . [T]he court's time was wasted, and this is prejudicial."). Therefore, the State's actions resulted in at least some degree of prejudice to Defendant and the court.

**{16}** Finally, with respect to the third *Harper* factor, the availability of lesser sanctions, we note *Le Mier*'s guidance that district courts are "not obligated to

consider every conceivable lesser sanction before imposing witness exclusion. . . . Rather, the [courts are] only required to fashion the least severe sanction that best fit the situation *and* which accomplished the desired result." *Id.* ¶ 27. While the record does not show an explicit consideration of lesser sanctions, we specifically remanded this case back to the district court to reexamine its ruling in light of *Harper* and *Le Mier*, and, therefore, we will assume the court was aware of its duty to consider lesser sanctions. Upon limited remand, the court issued an order detailing the State's actions and concluded, "[I]n this case, exclusion of the witness is the most appropriate sanction."

{17}   The district court was in the best position to determine the least severe sanction that would accomplish its desired result, and it is not our job to "second-guess our courts' determinations as to how their discretionary authority is best exercised." *Le Mier*, 2017-NMSC-017, ¶ 17. While we express some concern with the severity of the sanction imposed in light of the fact that Defendant never requested to interview Mr. Walton, given the district court's broad discretion to impose sanctions and our imperfect understanding of the proceedings we review, we cannot say that this was "clearly against the logic and effect of the facts and circumstances of the case." *Id.* ¶ 22.

**CONCLUSION**

**{18}** For the foregoing reasons, we affirm the district court's order granting Defendant's motion to exclude and remand for further proceedings consistent with this opinion.

**{19}** **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**


_____

**J. MILES HANISEE, Judge**


_____

**HENRY M. BOHNHOFF, Judge Pro Tempore**