# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:**_____

**Filing Date:  April 27, 2017**

**NO. S-1-SC-34830**

**STATE OF NEW MEXICO,**

Plaintiff-Respondent,

v.

**ASHLEY LE MIER,**

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Donna J. Mowrer, District Judge**

Bennett J. Baur, Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Hector H. Balderas, Attorney General
Jacqueline Rose Medina, Assistant Attorney General
Albuquerque, NM

for Respondent

**OPINION**

**NAKAMURA, Justice.**

{1}     In this case, we clarify the circumstances under which a court may permissibly exclude a witness as a discovery sanction.  The district court issued clear, unambiguous, and reasonable discovery orders to ensure that the parties would be prepared to try Defendant Ashley Le Mier's case in a timely fashion.  The State failed to comply with these orders, and the district court excluded one of the State's essential witnesses as a sanction.  The State could not proceed to trial without the witness and appealed.  The Court of Appeals held that *State v. Harper*, 2011-NMSC-044, 150 N.M. 745, 266 P.3d 25 precluded imposition of the sanction imposed and, thus, that the district court abused its discretion.  *State v. Le Mier*, No. 33,493, mem. op. ¶¶ 1, 8-9 (N.M. Ct. App. July 22, 2014) (non-precedential). We disagree. *Harper* poses no obstacle to the sanction imposed.  The district court's order was an appropriate exercise of its discretionary authority.  The Court of Appeals is reversed.

**I.**

{2}     Le Mier unsuccessfully attempted to smuggle illegal substances into the Roosevelt County Detention Center (RCDC) by concealing them within a body cavity.  The contraband was discovered during a strip search, Le Mier was charged

with three minor criminal offenses, she was arraigned on June 18, 2012, and pled not guilty. Trial was initially set for mid-January 2013 but was postponed and rescheduled three times: once early in the proceedings to allow Le Mier's initial counsel time to prepare, once midway through the proceedings to allow Le Mier's substitute counsel time to prepare, and once near the end of the proceedings because the State could not locate all of its witnesses.

{3}     The discovery phase of the proceedings lasted eighteen months. During this time, the State filed five different witness lists. Initially, eleven witnesses were enumerated, then twelve, and finally nine. Sergeant Divine Alcanzo—the corrections officer who supervised the strip search during which the contraband was discovered—appeared on all five witness lists.

{4}     Le Mier's substitute counsel, Margaret Strickland, entered her appearance in June 2013, a year after Le Mier's arraignment. At that time, the State had filed its second witness list, and Strickland made good faith efforts to contact the witnesses enumerated on that witness list. Strickland could not, however, reach several of the witnesses at the addresses provided—including Alcanzo, whose address was listed as the RCDC. Strickland alerted the court to her difficulties at the hearing on her motion to continue trial in August 2013.

{5}     At that hearing, the State assured the court that it would provide Strickland correct addresses for all witnesses. And as to Alcanzo, the State acknowledged that she no longer worked at the RCDC, no longer resided in New Mexico, and promised to provide Strickland her correct address. The record is silent as to when, precisely, the State learned these facts about Alcanzo. Three times prior to the motion hearing, the State represented that Alcanzo could be reached at the RCDC. In any case, the court granted Strickland's motion to continue and reset trial for October 2013.

{6}     Shortly after the hearing, the court entered a written order directing the State to file an updated witness list with correct addresses for all witnesses and provided a date by which this was to be accomplished. The State filed a third witness list by the date specified by the court. The third witness list gave an Amarillo, Texas address for Alcanzo. But as before, Strickland could not reach Alcanzo at that address despite her good faith efforts and similarly could not reach several other witnesses enumerated in the third witness list at the addresses provided by the State.

{7}     Strickland again alerted the court to the difficulties she was having locating and communicating with the State's witnesses by filing a motion to exclude witnesses and by alerting the court to the problem at a September 2013 pretrial conference. The court remained optimistic that the parties could settle the witness address issues and

instructed them to meet and work towards some resolution.

{8} A short time after the pretrial conference, the State filed a fourth witness list, which gave yet another Amarillo, Texas address for Alcanzo. Once again, Strickland was unable to reach Alcanzo at that address despite her good faith efforts and was also unable to reach several other witnesses enumerated in the State's fourth witness list at the addresses provided.

{9} In early October 2013, only a few days after the State filed its fourth witness list, the court held a hearing on Strickland's motion to exclude. At that hearing, the State acknowledged that it too had not been able to contact or communicate with most of the witnesses whom Strickland had been unable to contact. With this concession, the district court became aware that the State had made insufficient efforts to confirm the accuracy of the addresses provided, and had done this despite the fact that the court had ordered the State to provide Strickland correct addresses for all witnesses. The court informed the State that it was unfair to require Strickland to track down and communicate with witnesses the State had not itself located and who might not even testify at trial. Hoping to finally put the witness address issues to rest, the court once again ordered the State to provide Strickland correct addresses for all witnesses and again specified a date by which this was to be completed. The court took the

additional step of requiring the State to facilitate a telephone conversation between Strickland and Alcanzo. The court gave clear and explicit instructions: "if you find [Alcanzo], provide a telephonic interview with Ms. Strickland for her . . . . In other words, if you get her on the phone, you contact Ms. Strickland so that Ms. Strickland can have a telephone conference at the same time, okay?" The State confirmed that it understood the court's instructions and its obligations. The court concluded the hearing by informing the parties that it would reserve ruling on Strickland's motion to exclude witnesses up to the morning of trial. These rulings were memorialized in a written order filed shortly after the hearing.

{10} Less than a week after the hearing on the motion to exclude, the State filed its fifth witness list. And roughly two weeks later, at docket call in mid-October 2013, the State claimed that it still had difficulty locating witnesses, including Alcanzo, and requested a trial continuance. The State also had not yet facilitated the phone conversation between Strickland and Alcanzo and explained to the district court that it understood that it was required to facilitate the phone conversation *only if* it could locate Alcanzo. The court informed the State that its understanding was mistaken and bluntly instructed the State that it had to locate any witnesses it intended to call at trial and proceed with its case. Nevertheless, the court granted the State's

continuance request, but did so only because it was the first continuance the State requested and because Le Mier had already been granted two continuances. Trial was reset for December 30, 2013, but the court made clear that trial would not be postponed further.

{11} A status conference was held in early December 2013, and at the outset of the conference the court emphasized that the December 30, 2013, trial setting was "firm." The State informed the court that it had finally confirmed Alcanzo's address and promised that it would facilitate the phone conversation between Strickland and Alcanzo right away. The State did not follow through on its promise. Rather, it e-mailed Alcanzo's phone number to Strickland several days after the status conference. Strickland's office staff called that number several times, left messages, but received no response. At some point, an unknown female caller telephoned Strickland's office but refused to identify herself, uttered expletives, and promptly terminated the phone call.

{12} Ten days before the final trial setting, Strickland filed an amended motion to exclude witnesses. In that motion, she protested that the State still had neither facilitated the phone conversation between her and Alcanzo nor provided accurate addresses for all witnesses. Accordingly, she requested that Alcanzo and the two

6

other witnesses with whom she had not had any contact be excluded from testifying at trial.

{13}    A final hearing on Strickland's motion and amended motion to exclude witnesses was conducted on December 23, 2013, one week before what both parties knew was the final trial setting. The court asked the State why it still had not facilitated the phone conversation between Strickland and Alcanzo, and this time the State replied that it believed it had complied with the court's order to facilitate the communication by providing Strickland with Alcanzo's phone number. With respect to the two other witnesses, the State informed the court that it too had not been in touch with one of those witnesses and agreed not to call that individual at trial. And as to the other witness, the State indicated that it had a phone number where he could be reached.

{14}    Plainly frustrated, the court considered requiring the State to procure Alcanzo that very afternoon so that Strickland could interview her, but discussion with Strickland proved that this was not a viable option. Accordingly, the court granted Le Mier's request to exclude Alcanzo. The court also excluded one of the other two witnesses whom Strickland had been unable to reach. In a subsequently filed written order, the court concluded that the State had been culpable in failing to comply with

the court's discovery orders, the State's failure to comply with the court's orders prejudiced Le Mier, and no lesser sanctions were available.

## II.

{15}     In *Harper*, we embraced a pragmatic approach to guide courts in assessing whether the sanction of witness exclusion is appropriate.  2011-NMSC-044, ¶ 15. *Harper* instructs our courts to assess (1) the culpability of the offending party, (2) the prejudice to the adversely affected party, and (3) the availability of lesser sanctions. *Id.*  The present case and others like it persuade us that our intentions in *Harper* have not been understood.  *See State v. Ramos*, No. 33,969, mem. op. ¶ 7 (N.M. Ct. App. Feb. 11, 2015) (non-precedential) (agreeing that the state's refusal to file a mandatory response to a dispositive pleading was both "troubling" and "inappropriate," but nevertheless reversing the district court's decision to dismiss the charges against the defendant on grounds that *Harper* permits such a sanction only where the state's conduct is tantamount to a willful refusal to participate in discovery such that the defendant is deprived of her ability to present a defense); *State v. Maldonado*, No. 33,403, mem. op. ¶¶ 1-4 (N.M. Ct. App. Nov. 18, 2014) (non-precedential) (reversing the district court's decision to exclude three state witnesses who failed to appear at their designated witness interviews and, thus, were not interviewed within the time

8

frame required by the district court's scheduling order on grounds that *Harper* permits exclusion of witnesses only where the defendant's access to all evidence is precluded by the state's "intransigence").

{16} *Harper* did not establish a rigid and mechanical analytic framework. Nor did *Harper* embrace standards so rigorous that courts may impose witness exclusion only in response to discovery violations that are egregious, blatant, and an affront to their authority. Such a framework and such limitations would be unworkable in light of the fact that our courts' authority to exclude witnesses is discretionary, *Mathis v. State*, 1991-NMSC-091, ¶ 13, 112 N.M. 744, 819 P.2d 1302, and courts must be able to avail themselves of, and impose, meaningful sanctions where discovery orders are not obeyed and a party's conduct injects needless delay into the proceedings. *See State ex rel. N.M. State Highway & Transp. Dep't v. Baca*, 1995-NMSC-033, ¶ 11, 120 N.M. 1, 896 P.2d 1148.

{17} As a reviewing court, we cannot attempt to precisely delineate how trial courts are to exercise their discretionary authority in the varied cases over which they must preside. *See Taylor v. Illinois*, 484 U.S. 400, 414 (1988) ("[A] comprehensive set of standards to guide the exercise of discretion in every possible case" is "neither necessary nor appropriate."). Similarly, we cannot second-guess our courts'

determinations as to how their discretionary authority is best exercised. *See United States v. Frasch*, 818 F.2d 631, 633-34 (7th Cir. 1987) (observing that the task of a reviewing court considering a trial court's discretionary determination "is not to second-guess the decision, but only to ensure that the trial court made a principled exercise of its discretion."). As an appellate court, we necessarily operate with imperfect information about the proceedings we review, and our assessment of the propriety of the decision to impose or not to impose witness exclusion must reflect this reality. *See United States v. Harrington*, 490 F.2d 487, 497 (2d Cir. 1973) (Friendly, J., dissenting) ("[T]he majority has yielded to the temptation of second-guessing, in the peace and quiet of appellate chambers, the reasoned action of an experienced [trial] judge . . . .").

{18} More critically, trial courts shoulder the significant and important responsibility of ensuring the efficient administration of justice in the matters over which they preside, and it is our obligation to support them in fulfilling this responsibility. The judiciary, like the other co-equal branches of our state government, ultimately serves the people of New Mexico. No one is well-served—not defendants, not victims, not prosecutors, not courts, and certainly not the citizens of New Mexico—by a system of justice where cases needlessly languish in

10

some obscure netherworld because one or both of the parties lack the will or capacity to comply with basic discovery deadlines, and courts are either reluctant to impose meaningful sanctions because they fear the prospect of reversal on appeal or have not taken sufficient responsibility for ensuring the swift and efficient administration of justice. The truth of this assertion is borne out quite plainly by the failed record of those jurisdictions where a culture of delay has been permitted to flourish. *See, e.g.*, William Glaberson, *Faltering Courts, Mired in Delays*, N.Y. Times, Apr. 13, 2013, http://www.nytimes.com/2013/04/14/nyregion/justice-denied-bronx-court-system-mired-in-delays.html (last visited March 10, 2017). The old adage "justice delayed is justice denied" is well-worn because it is true.

{19}     Where discovery violations inject needless delay into the proceedings, courts may impose meaningful sanctions to effectuate their inherent power and promote efficient judicial administration. *See Baca*, 1995-NMSC-033, ¶ 11 (recognizing that district courts "have inherent power to impose a variety of sanctions . . . to regulate their docket, promote judicial efficiency, and . . . command the obedience of litigants and their attorneys . . . . " (internal quotation marks and citations omitted)); *see also State v. Stills*, 1998-NMSC-009, ¶¶ 43-44, 125 N.M. 66, 957 P.2d 51 (affirming the district court's decision to preclude witness testimony as a sanction for defense

counsel's "delay tactics" and to ensure the "integrity of the judicial system, and [the] efficient administration of justice"); 5 Wayne R. LaFave et al., *Criminal Procedure* § 20.6(b), at 596-97 (4th ed. 2015) (observing that some jurisdictions allow district courts to utilize the power of exclusion to compel compliance with the rules of discovery). *Harper* in no way circumscribed our courts' authority to exercise this power, and we now expressly authorize our courts to utilize witness exclusion to proactively manage their dockets, achieve efficiency, and ensure that judicial resources—which are greatly limited—are not wasted.

{20}     Courts must evaluate the considerations identified in *Harper*—culpability, prejudice, and lesser sanctions—when deciding whether to exclude a witness and must explain their decision to exclude or not to exclude a witness within the framework articulated in *Harper*, but it is not the case that witness exclusion is justified only if all of the *Harper* considerations weigh in favor of exclusion. As one court explained, "[o]n occasion the district court may need to suppress evidence that did not comply with discovery orders to maintain the integrity and schedule of the court even though the defendant may not be prejudiced." *See United States v. Wicker*, 848 F.2d 1059, 1061 (10th Cir. 1988). What is embodied in this observation is a view we have always embraced: Whether it is proper to exclude a witness is not a simple

choice easily resolved by reference to some basic judicial arithmetic. The question requires our courts to navigate an array of concerns and to exercise their discretionary power with practical wisdom and due care. *See State v. Guerra*, 2012-NMSC-014, ¶ 33, 278 P.3d 1031 ("The decision to exclude evidence calls on judicial discretion to weigh all the circumstances . . . .").

{21} When exercising their discretionary power, our courts must be ever mindful of the fact that witness exclusion is a severe sanction and one that should be utilized as a sanction of last resort. *See Harper*, 2011-NMSC-044, ¶ 21. Witness exclusion may harm the community's interest by detrimentally affecting the prosecution's ability to see an offender brought to justice and, conversely, can thwart the accused's opportunity to demonstrate innocence. *See* 5 LaFave, *supra*, § 20.6(b), at 594 (observing that the exclusion of the prosecution's evidence adversely affects "the interests of the community, the party represented by the prosecutor"); 22A C.J.S. *Criminal Procedure and Rights of the Accused* § 465, at 210 (2016) ("[E]xclusion of exculpatory evidence implicates the defendant's constitutional right to defend himself or herself."). For these reasons, our courts do not possess unfettered discretionary authority to impose witness exclusion; but, nor is that discretion so limited that it amounts to no discretion at all.

{22}      In sum, we merely reiterate what was true well before *Harper*: Trial courts possess broad discretionary authority to decide what sanction to impose when a discovery order is violated. *See, e.g.*, *State v. Johnson*, 1977-NMCA-109, ¶ 4, 91 N.M. 148, 571 P.2d 415.  The propriety of a trial court's decision to exclude or not to exclude witnesses is reviewed for abuse of discretion. *Guerra*, 2012-NMSC-014, ¶ 23.  "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case.  We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citations omitted).  In reviewing the district court's decision, this Court views the evidence—and all inferences to be drawn from the evidence—in the light most favorable to the district court's decision. *Mathis*, 1991-NMSC-091, ¶ 13.

**III.**

{23}      In this case, a basic discovery rule was flagrantly violated: "Unless a shorter period of time is ordered by the court, within ten (10) days after arraignment . . . the state shall disclose or make available to the defendant: . . . a written list of the names and addresses of all witnesses which the prosecutor intends to call at the trial . . . ."

Rule 5-501(A)(5) NMRA. This rule would have little or no practical value if it were not true that it requires the state to provide *correct* witness addresses. *See State v. Orona*, 1979-NMSC-011, ¶ 6, 92 N.M. 450, 589 P.2d 1041 ("[T]he purpose of [requiring the state to provide the defendant a witness list is] to assist defense counsel in the preparation of a defense by providing the opportunity to interview the government's witnesses."), *holding limited on other grounds by State v. Jojola*, 2006-NMSC-048, ¶¶ 5, 12, 140 N.M. 660, 146 P.3d 305. It is understandable that in certain circumstances locating a witness's correct address may take more time than the rule allows. This is precisely what happened in the present case and the district court was appropriately lenient. Nevertheless, a threshold was crossed. Despite repeated orders, the State failed to provide correct witness addresses—for Alcanzo and other witnesses—throughout nearly the entirety of the eighteen-month discovery period. The State also failed to facilitate the phone call between Strickland and Alcanzo as ordered. When considering Strickland's amended motion to exclude, the district court appropriately evaluated the State's culpability, whether the State's conduct gave rise to prejudice, and whether excluding Alcanzo was the least severe sanction appropriate under the facts and circumstances of this case.

{24} The district court did not abuse its discretion in finding the State culpable.

15

Parties must obey discovery orders. *See State v. Layne*, 2008-NMCA-103, ¶ 13, 144 N.M. 574, 189 P.3d 707 (quoting *State v. Doe*, 1978-NMCA-124, ¶ 8, 92 N.M. 354, 588 P.2d 555) ("[U]pon failure to obey a discovery order, the court may enter such order as is appropriate under the circumstances.") (alteration in original) (internal quotation marks omitted)). Our system of justice would be neither orderly nor efficient if this were not true. The court repeatedly ordered the State to provide Strickland correct witness addresses and the State repeatedly failed to comply. This is sufficiently culpable conduct to justify exclusion. While here the violations were multiple, a single violation of a discovery order may suffice to support a finding of culpability. Moreover, the court's orders were clear and unambiguous, and the violation of clear and unambiguous orders is only further proof of culpable conduct. *Cf. Harper*, 2011-NMSC-044, ¶¶ 7, 27-28 (taking into consideration the fact that the district court's order, as well as the court's commentary at hearings, was vague in reversing the district court's decision to preclude witness testimony).

{25} Similarly, we find no abuse of discretion in the district court's conclusion that the State's failure to comply with the court's discovery orders gave rise to prejudice. When a court orders a party to provide discovery within a given time frame, failure to comply with that order causes prejudice both to the opposing party and to the court.

16

Le Mier was prejudiced in two ways. The court had to reset trial as a consequence of the State's inability to locate its witnesses and provide Strickland correct witness addresses, and this prejudiced Le Mier by needlessly delaying her proverbial "day in court." In addition, the State's conduct forced Strickland into an unenviable position she quite understandably wished to avoid. Trial was imminent and Strickland had not yet communicated with Alcanzo (an essential witness) and other named State witnesses. These circumstances subjected Strickland to the possibility of trial by surprise and, thus, prejudiced Le Mier. *See McCarty v. State*, 1988-NMSC-079, ¶ 14, 107 N.M. 651, 763 P.2d 360 ("[T]he ends of justice will best be served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial." (internal quotation marks and citation omitted)); *see also Scipio v. State*, 928 So. 2d 1138, 1144 (Fla. 2006) ("[T]he chief purpose of our discovery rules is to assist the truth-finding function of our justice system and to avoid trial by surprise or ambush.").

{26} The district court was also prejudiced in two ways. The State's inability to provide Strickland correct witness addresses required the court to dedicate its time and resources to a needless and wasteful cause: ensuring compliance with basic

17

discovery rules and orders. Courts need not suffer nor tolerate a party's inability to comply with rules and orders but must instead ensure that the party's non-compliance does not result in the waste of judicial resources. Here, the court's time was wasted, and this is prejudicial. Additionally, the State's dilatory conduct disrupted the court's docket in that the State's inability to locate its witnesses necessitated continuing and resetting trial. This is no minor inconvenience. When courts cordon off dates for particular parties and proceedings, they necessarily commit to not hearing other equally important matters involving other parties. When a party accepts a setting only to later abandon it for no meritorious reason, other parties and the justice system as a whole suffers. This is precisely what happened here, and this gave rise to prejudice.

{27}    Lastly, we are persuaded that witness exclusion was the least severe sanction in light of the circumstances of this case. We reach this conclusion for the following three reasons. First, the district court was not obligated to consider every conceivable lesser sanction before imposing witness exclusion. To require this would be to significantly impinge upon and curtail the court's broad discretionary authority to fashion appropriate sanctions for discovery violations. *See State v. Martinez*, 1998-NMCA-022, ¶ 8, 124 N.M. 721, 954 P.2d 1198 (observing that the district court possesses a "breadth of discretion" to fashion sanctions). Rather, the court was only

18

required to fashion the least severe sanction that best fit the situation *and* which accomplished the desired result. *Id.*

{28} Second, the court gave the State multiple and varying opportunities to cure its discovery violations and imposed exclusion only after progressive sanctions failed to produce the desired effect. From the time she first entered her appearance, Strickland repeatedly asked for correct addresses for all witnesses including Alcanzo. The court ordered the State—twice by written order and numerous times orally at hearings—to provide correct addresses for all witnesses. Yet, the State did not comply with these orders and did not provide Strickland with Alcanzo's correct address until late in the proceedings. As discovery dragged on and it became clear to the court that the State was having difficulty identifying Alcanzo's correct address, the court quite sensibly pursued an alternative strategy and ordered the State to facilitate a phone conversation between Strickland and Alcanzo. The State also did not comply with this order. Additionally, the court granted the State's continuance request and rescheduled trial to permit the State more time to locate Alcanzo and other witnesses. These facts demonstrate that the court gave the State ample opportunity to comply with reasonable and clear orders and imposed exclusion only after implementing progressively more stringent requirements that were designed to

19

bring the State into compliance. Progressive sanctions may be impractical or infeasible in some cases. But when they are imposed, evidence of their utilization most certainly bears on whether a court imposed the least severe sanction appropriate given the circumstances presented.

{29} Third, we are persuaded that, by electing to exclude Alcanzo, the district court responded to the specific violation at issue with a sanction tailored to fit that violation. Moreover, the sanction imposed simultaneously ensured that the court's authority to efficiently administer the law and ensure compliance with its orders was vindicated. We reiterate that our courts need not stand idly by and tolerate dilatory conduct by the parties. Rather, our courts are encouraged to ensure the timely adjudication of cases, to proactively manage their dockets, and to utilize appropriate sanctions to vindicate the public's interest in the swift administration of justice. It is clear that the district court was effectuating these very interests when it excluded Alcanzo and we will not second-guess the court's judgment that exclusion was the most effective and least severe way to achieve the desired ends.

**IV.**

{30} The district court did not abuse its discretion in excluding Alcanzo from testifying at Le Mier's trial. The Court of Appeals' opinion is reversed, and the

20

district court's order excluding Alcanzo is affirmed.  The matter is remanded to the district court for proceedings consistent with this opinion.

{31}    **IT IS SO ORDERED.**

_____
**JUDITH K. NAKAMURA, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**BARBARA J. VIGIL, Justice**

21