This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36766

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**CHRISTOPHER FERNANDEZ,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cindy Leos, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
John Bennett, Assistant Appellate Defender
Santa Fe, NM

for Appellee

### MEMORANDUM OPINION

**VARGAS, Judge.**

**{1}**     The State appeals the district court's order sanctioning the State for its delay in scheduling pretrial interviews. The State's appeal presents the following issues: (1) whether its appeal was timely filed and (2) whether the State has a constitutional right to appeal the district court's order. We dismiss for lack of jurisdiction. Because this is a memorandum opinion, we limit our recitation of the facts to those relevant to our analysis.

## BACKGROUND

**{2}** After Defendant Christopher Fernandez was arraigned, defense counsel submitted a notice of his availability for pretrial interviews (Availability Notice) to the district court on August 22, 2016. He did not, however, email the Availability Notice to the State at that time. On September 2, 2016, the district court entered a scheduling order assigning Defendant's case to Track 3 pursuant to LR2-308(G) NMRA[1], and ordering (1) the parties to complete pretrial interviews by May 31, 2017; (2) defense counsel to provide his availability for pretrial interviews to the State by September 16, 2016; and (3) the State to notify the district court if defense counsel failed to provide his availability for pretrial interviews. The scheduling order further required the parties to send opposing counsel any filed motions by email.

**{3}** On December 20, 2016, Defendant moved for the disclosure of materials concerning any witness providing expert testimony. On January 26, 2017, the State responded to Defendant's motion, asserting that some of the disclosures were more properly addressed in a pretrial interview, and that "the State ha[d] not received any requests for pre[]trial interviews by [Defendant] despite the scheduling order requiring a request be made in writing to the State by September 16, 2016." The district court ordered the State to investigate the existence of, and produce, the materials Defendant requested.

**{4}** On April 3, 2017, in its response to a defense motion, the State noted that it had not received requests for pretrial interviews from Defendant, and it requested an extension of the pretrial interview deadline. In its May 5, 2017 response to a subsequent defense motion, the State again noted it had not received requests for pretrial interviews from Defendant. In a hearing on May 19, 2017, Defendant provided the State with a copy of the Availability Notice and explained that he filed an Availability Notice in August 2016 and sent a copy of the notice to the State via email on May 2, 2017. The State, however, responded that it never received the May 2 email. The district court extended the deadline for pretrial interviews to June 15, 2017. A week later on May 26, 2017, the State began scheduling pretrial interviews in accordance with the Availability Notice and notified Defendant to that effect.

**{5}** On June 6, 2017, Defendant filed a motion to obtain the requested time for pretrial interviews. Defendant attached a copy of the Availability Notice to his motion and noted that the State had delayed setting up pretrial interviews since counsel provided the notice in August 2016. In response to Defendant's motion, the State, on June 15, 2017, asserted that Defendant had not provided the State with, nor mentioned, the Availability Notice until the May 19, 2017 hearing. Further, the State said it had attempted to comply with the time requests in Defendant's Availability Notice, but that it "was only able to provide [pretrial interviews] for scientific experts based out of Santa Fe

---

1Pursuant to Supreme Court Order No. 16-8300-015 (2016), former LR2-400 NMRA was recompiled and amended as LR2-308, "effective for all cases pending or filed on or after December 31, 2016[.]" All references to LR2-308 in this opinion are to the 2017 version of the rule unless otherwise noted.

by telephone." The State requested an extension of the deadline for pretrial interviews and repeated its request for an extension at a June 16, 2017 hearing.

{6}     On June 8, 2017 the State filed an amended notice of intent to call witnesses listing forty-eight witnesses, most of whom appeared on prior iterations of its notice. On June 21, 2017, Defendant filed a motion to exclude witnesses who were not made available for pretrial interviews before the June 15, 2017 deadline, attaching a list of six witnesses who had failed to appear at their scheduled interviews and another thirty-three witnesses who had never been scheduled. A week later, on June 28, 2017, the State requested an extension of the pretrial interview deadline, citing Defendant's failure to email the Availability Notice, and explained that its DNA analyst was unavailable for a pretrial interview because she had a conflict. At the June 29, 2017 hearing on Defendant's motion to exclude witnesses, the State advised the district court that defense counsel had interviewed all of the witnesses the State intended to call at trial, except for its DNA analyst. In its order denying Defendant's motion to exclude witnesses, the district court found that there was no indication the Availability Notice was emailed to the State in August 2016 and that the State's assertions on January 26, April 3, and May 5, 2017 that it had not received requests for pretrial interviews demonstrated the State's lack of awareness of the Availability Notice. Nevertheless, the district court found that the State was on notice of defense counsel's availability for pretrial interviews when he emailed the State the Availability Notice on May 2, 2017. As the State did not notify Defendant of its pretrial interview schedule until May 26, 2017, the district court ruled that the State delayed scheduling pretrial interviews and would, therefore, be subject to a monetary sanction for the period of delay between May 2 and May 26.

{7}     The State filed a motion to reconsider the district court's sanction order, disputing the district court's finding that the State received Defendant's Availability Notice on May 2. Attached to the State's motion was a copy of Defendant's May 2 email, which indicated that defense counsel added an extra dot in the prosecutor's email address. The State also provided an affidavit from the Information Systems Manager for the Second Judicial District Attorney's Office, who explained that his search of the district attorney's office email server revealed only two emails sent by defense counsel from May 1 to May 5, 2017, both of which were unrelated to this case.

{8}     In its order on the State's motion to reconsider, the district court ruled that it was "unable to determine whether the [May 2] email was received by the State[.]" Finding the State had not yet violated the scheduling order, the district court withdrew its initial sanction order. Nonetheless, the district court entered a modified sanction order imposing a monetary sanction against the State for failing to arrange an interview of its DNA analyst by the June 29 hearing, which was fourteen days after the deadline for completing pretrial interviews. This appeal followed.

## DISCUSSION

### I.     Timeliness

**{9}** Before resolving the question of whether we have jurisdiction to hear the State's appeal challenging the district court's sanction, we must first discuss the timeliness of the State's appeal. "The timely filing of a notice of appeal is a mandatory precondition to this Court's exercise of jurisdiction." *State v. Lope*, 2015-NMCA-011, ¶ 8, 343 P.3d 186 (internal quotation marks and citation omitted). The State was required to file its notice of appeal "within thirty (30) days after the judgment or order appealed from is filed in the district court clerk's office." Rule 12-201(A)(1)(b) NMRA. As the district court entered its order partially granting the State's motion to reconsider on August 25, 2017, and the thirtieth day after the order was a Sunday, the time in which the State was required to file its notice of appeal continued until the following day (i.e., September 25, 2017). *See* Rule 12-308(A)(1)(c) NMRA (explaining that when computing a time period stated in eleven days or more, the period "include[s] the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday"). Although the State did not file its notice of appeal until September 26, 2017, we nonetheless conclude the untimely filing does not bar review from this Court. *See Santa Fe Pac. Tr., Inc. v. City of Albuquerque*, 2012-NMSC-028, ¶ 27, 285 P.3d 595 ("An untimely appeal should be heard if . . . the appeal is only marginally untimely.").

## II. Jurisdiction

**{10}** We now turn to the question of whether we have jurisdiction to hear the State's appeal. The State does not argue we have jurisdiction to hear its appeal under its right to appeal by statute or rule. *See State v. Heinsen*, 2005-NMSC-035, ¶ 7, 138 N.M. 441, 121 P.3d 1040 ("The [s]tate's right to appeal an adverse ruling in a criminal proceeding exists only by constitutional provision, statute, or rule."). Rather, the State argues it has a constitutional right to appeal the district court's sanction order. "In considering whether the State has a constitutional right to appeal, we look at whether the district court's disposition was contrary to law." *State v. Grossetete*, 2008-NMCA-088, ¶ 5, 144 N.M. 346, 187 P.3d 692. "[A]s a practical matter, we must decide the merits of the issues the [s]tate raises in order to determine if it has a constitutional right to appeal." *State v. Horton*, 2008-NMCA-061, ¶ 1, 144 N.M. 71, 183 P.3d 956.

**{11}** "[District] courts possess broad discretionary authority to decide what sanction to impose when a discovery order is violated." *State v. Le Mier*, 2017-NMSC-017, ¶ 22, 394 P.3d 959. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). Additionally, "we may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." *Harrison v. Bd. of Regents of Univ. of N.M.*, 2013-NMCA-105, ¶ 14, 311 P.3d 1236 (internal quotation marks and citation omitted). "We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Le Mier*, 2017-NMSC-017, ¶ 22 (internal quotation marks and citation omitted). When the district court acts within its discretionary authority, however, its disposition is not contrary to law. *Grossetete*, 2008-NMCA-088, ¶ 10.

**{12}**     To determine whether the district court acted within its discretionary authority, we review the State's arguments that (1) the district court's modified sanction order involved a misapplication of the law and its scheduling order; (2) the district court's findings were not supported by the record; (3) the district court's requirements were "impossible to fulfill[;]" and (4) the district court erroneously sanctioned the State, rather than defense counsel, for issues caused by defense counsel's actions.

## A.     The District Court's Application of the Law and Scheduling Order

**{13}**     The State first argues the district court's modified sanction order was not a proper exercise of its discretionary authority because it misapplied the law and its scheduling order. In particular, the State argues it did not violate a provision of LR2-308 or the time limitations imposed by the district court's scheduling order, and the district court therefore "lacked a legal basis to impose the sanction it ultimately imposed."

**{14}**     The district court entered its scheduling order pursuant to LR2-308(G)(4), which requires the district court to assign the case to one of three tracks and to identify "the dates when events required by that track shall be scheduled[.]" The rule further provides that "[i]f a party fails to comply with any provision of this rule or the time limits imposed by a scheduling order entered under this rule, the court shall impose sanctions as the court may deem appropriate in the circumstances and taking into consideration the reasons for the failure to comply." LR2-308(I)(1). LR2-308(A) also recognizes that "existing case law on criminal procedure continue[s] to apply to cases filed in the Second Judicial District Court, but only to the extent they do not conflict with this pilot rule." We therefore proceed to a review of the applicable case law.

**{15}**     Our Supreme Court has recognized that district courts "must be able to avail themselves of, and impose, meaningful sanctions where discovery orders are not obeyed and a party's conduct injects needless delay into the proceedings." *Le Mier*, 2017-NMSC-017, ¶ 16. When a district court imposes sanctions for discovery violations, it must evaluate culpability, prejudice, and lesser sanctions and must explain its decision. *Id.* ¶ 20. However, *Le Mier* clarified that to justify a district court's sanction, these considerations need not all weigh in favor of the sanction. *Id.*

**{16}**     Here, the district court appropriately weighed the State's culpability, finding that, despite receiving the Availability Notice at the May 19 hearing, the State failed to complete an interview of its DNA analyst by the initial May 31 deadline, the extended June 15 deadline for completing pretrial interviews, or the June 29 hearing, which was held fourteen days after the extended deadline. *See id.* ¶ 24 (recognizing that "a single violation of a discovery order may suffice to support a finding of culpability[,] . . . and [that] the violation of clear and unambiguous orders is only further proof of culpable conduct"). The district court also considered whether the State's conduct gave rise to prejudice, explaining in its initial sanction order that the State's failure to interview its DNA analyst causes "little to no prejudice to the defense" and "causes no delay in proceeding to trial[,]" but later noting that "the lack of cooperation between the parties resulted in unnecessary delay, motions hearings on discovery issues and extensions of

the scheduling order." *See id.* ¶¶ 26, 20 (explaining that the required considerations need not all weigh in favor of the district court's sanction, but that when "the court's time is wasted, . . . this is prejudicial"). Finally, by imposing monetary sanctions rather than the witness exclusion sought by Defendant prior to the district court's initial sanction order, the district court properly evaluated whether the sanction imposed was the least severe sanction. *See id.* ¶ 29 (holding that a sanction is the least severe sanction in the light of the circumstances when "the district court responded to the specific violation at issue with a sanction tailored to fit that violation"). Based on the facts of this case, we cannot conclude the district court abused its discretion, and its order was, therefore, not contrary to law on this basis. *See id.* ¶ 22 (explaining that a district court abuses its discretion when its "ruling is clearly against the logic and effect of the facts and circumstances of the case[,]" and is "clearly untenable or not justified by reason"); *see also Harrison*, 2013-NMCA-105, ¶ 14 (characterizing a decision as an abuse of discretion when it "is premised on a misapprehension of the law"); *Grossetete*, 2008-NMCA-088, ¶ 10 (observing that when a district court acts "within its discretionary authority, the disposition was not contrary to law").

## B.    The District Court's Findings

**{17}**    Having concluded the district court did not misapply the law or its scheduling order, we next address the State's argument that the district court's findings were not supported by the record. The State challenges the following findings: (1) that "[t]he State never filed a motion to extend pretrial interview deadlines nor did [it] file any sort of pleading alerting the [district c]ourt that the June 15, 2017 [pretrial interview] deadline was causing issues of the interview of the DNA [analyst]" and (2) that the State "should have been more diligent in notifying the [district c]ourt of the issues with interviewing [the DNA analyst]."

**{18}**    Although the State requested extensions of the pretrial interview deadlines on four occasions—April 3, June 15, June 16, and June 28, 2017—we cannot conclude the district court's order was an abuse of discretion. Notwithstanding the district court's apparent error in finding the State "never filed . . . any sort of pleading alerting the [district c]ourt that the June 15, 2017 . . . deadline was causing issues[,]" the unchallenged findings demonstrate that the district court's ruling was not "clearly against the logic and effect of the facts and circumstances of the case" nor "clearly untenable or not justified by reason." *Le Mier*, 2017-NMSC-017, ¶ 22 (internal quotation marks and citation omitted).

**{19}**    In its modified sanction order, the district court "sanctioned [the State] for delaying in the scheduling of the interviews from June 15, 2017 (the [pretrial interview] extension date) through June 29, 2017 (the date of the hearing on [Defendant's m]otion to [e]xclude [w]itnesses)[.]" In its findings, which are unchallenged on appeal, the district court found that the State was aware of defense counsel's Availability Notice as of May 19, that the State did not begin scheduling pretrial interviews until May 26, and that—with the extension of the pretrial interview deadline—the State did not complete a pretrial interview of its DNA analyst by the June 29 hearing. Based on the foregoing, we

cannot conclude the district court's modified sanction order was an abuse of discretion. *See Le Mier*, 2017-NMSC-017, ¶ 22.

## C.     The "Impossibility" of Complying With the Scheduling Order

**{20}**    The State next argues the modified sanction order was not a proper exercise of the district court's discretionary authority because defense counsel's limited time availability rendered completion of pretrial interviews by the initial deadline for completing pretrial interviews on May 31 "mathematically impossible." However, the State fails to explain how this argument has any bearing upon the district court's stated basis for sanctioning the State in the modified sanction order: the State's failure to schedule a pretrial interview between the extended June 15 deadline and the June 29 hearing. *See Headley v. Morgan Mgmt Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (explaining that we do "not review unclear arguments, or guess at what [the party's] arguments might be"). We are therefore not persuaded that the district court's order was an abuse of discretion on these grounds.

## D.     The District Court's Disposition Relative to Defendant's Conduct

**{21}**    Finally, the State argues the district court's modified sanction order was an abuse of discretion because it sanctioned the State, rather than defense counsel, for issues caused by defense counsel's failure to provide the Availability Notice to the State until May 2017, which in turn was a violation of LR2-308 and the district court's scheduling order. To be sure, LR2-308(D)(6) requires parties to serve pleadings and papers "to the attorney[.]" Further, the scheduling order required defense counsel to provide his availability for pretrial interviews to the State by September 16, 2016 and additionally required the parties to send all filed motions to opposing counsel by email. Contrary to the State's assertion that the district court failed to sanction Defendant for defense counsel's actions, the district court expressly stated in its initial sanction order that "Defendant did not cooperate in good faith to schedule the pretrial interviews on this case and therefore [his motion to exclude witnesses] is denied." *See* LR2-308(I)(1), (3) (providing a non-exhaustive list of sanctions the district court may impose on a party for failing to comply with any provision of LR2-308 or the time limits imposed by a scheduling order entered under the rule). Moreover, notwithstanding any violations by defense counsel, the State failed to interview its DNA analyst by both the June 15 pretrial interview deadline and the June 29, 2017 hearing—well after defense counsel provided the State with the Availability Notice on May 19. We therefore cannot conclude the district court's modified sanction order was an abuse of discretion. *See Le Mier*, 2017-NMSC-017, ¶ 22; *Harrison*, 2013-NMCA-105, ¶ 14 (characterizing a decision as an abuse of discretion when it "is premised on a misapprehension of the law" (internal quotation marks and citation omitted)).

## CONCLUSION

**{22}**    Because the district court acted within its discretionary authority, its modified sanction order was not a disposition contrary to law, and we dismiss the State's appeal

for lack of jurisdiction. *See Grossetete*, 2008-NMCA-088, ¶¶ 10, 15 (dismissing the state's appeal because the district court acted within its discretionary authority and, because the district court's order was therefore not contrary to law, the state did not have a constitutional right to appeal).

{23}   IT IS SO ORDERED.

JULIE J. VARGAS, Judge

WE CONCUR:

M. MONICA ZAMORA, Judge

JACQUELINE R. MEDINA, Judge