This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-42901**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**ARTHUR RODNEY RUIZ, JR.,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Courtney Weaks, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Solicitor General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Santa Fe, NM

for Appellee

### MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** This matter was submitted to the Court on the brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Having considered the brief in chief, concluding the briefing submitted to the Court provides no possibility for reversal, and determining that this case is appropriate for resolution on Track 1 as defined in that order, we affirm for the following reasons.

**{2}** Pursuant to NMSA 1978, Section 39-3-3(B)(2) (1972), the State appeals from the district court's order excluding the testimony of Victim, D.S, as a discovery sanction for failing to disclose D.S. as a witness until the eve of trial. [2 RP 265-76] The district court found that the State failed to comply with LR2-308 NMRA, and that exclusion of D.S. was the appropriate sanction due to the State's culpability for the error and the degree of prejudice to Defendant. *See State v. Le Mier*, 2017-NMSC-017, ¶ 15, 394 P.3d 959 (explaining that a district court must consider "(1) the culpability of the offending party, (2) the prejudice to the adversely affected party, and (3) the availability of lesser sanctions" when excluding a witness from testifying at trial as a discovery sanction); *see also State v. Harper*, 2011-NMSC-044, ¶ 15, 150 N.M. 745, 266 P.3d 25 (same).

**{3}** The relevant facts are as follows. Defendant was charged with numerous allegations of sexual offenses against several minors, including Victim D.S. [BIC 2] The district court assigned the case to Track 3 under LR2-308, setting the trial for November 2022 and requiring all witness interviews to be completed by July 2022. [BIC 2] The State filed a notice of compliance with witness interviews in December 2021, asserting that Defendant had not requested interviews within twenty-one days after the issuance of the scheduling order. [BIC 2] At a status hearing in October 2022, the State notified the district court that it was still waiting to hear from Defendant about scheduling witness interviews. [BIC 3] The case was then continued multiple times to allow Defendant to schedule pretrial interviews, eventually setting trial for February 2024. [BIC 3]

**{4}** While the State included D.S. on its original witness list in October 2021 [1 RP 16], the State did not include D.S. on its final witness list submitted in January 2024, notifying Defendant and the district court that D.S. was unavailable and would not be testifying at the February 2024 trial. [BIC 4-5; 1 RP 75] On the day before trial, Defendant moved, in relevant part, to exclude all witnesses not made available for pretrial interviews as well as statements made by D.S. during her safe house interview. [BIC 4-5; 1 RP 98-104] At the hearing on Defendant's motion, the State agreed that D.S.'s statements about the incident to the safe house interviewer were not admissible at trial. [2/20/2024 CD 4:44:30-4:52:30] The district court granted Defendant's motion, explained that it was granting the motion because the State was not calling D.S. to testify at trial, and stating "any and all statements made by [D.S.] to [nurse] are excluded." [*Id.* 5:04:30-05:07:05] However, Defendant's February 2024 trial was declared a mistrial due to Defendant's failure to appear in court after his trial had begun. [BIC 5] The district court later denied the State's motion to reconsider its ruling excluding the statements D.S. made during her medical exam and safe house interview. [BIC 5]

**{5}** Defendant's second trial was scheduled for July 14, 2025. [BIC 6; 1 RP 227-29] On July 8, 2025, the State filed its witness list for trial, indicating for the first time since October 2021 that it would call D.S. to testify. [BIC 6; 1 RP 250] At the final pretrial conference on July 9, 2025, Defendant raised concerns about D.S. now appearing on the State's witness list because Defendant had not conducted a pretrial interview with her. [BIC 6] The State argued that Defendant had canceled multiple pretrial interview dates during the early stages of the case, but admitted that D.S. was unable to be

interviewed beginning around September 2023 for mental health reasons. [BIC 6] However, the State asserted that D.S. was now available for a pretrial interview, despite acknowledging that "there has never been a representation from the State since [the February 2024 mistrial] that D.S. was going to be able to testify" at trial, and that D.S. had only just now informed the State that she was willing to testify. [BIC 6-7; 7/9/2025 CD 10:31:00-31:50] The district court indicated that it was inclined to grant Defendant's oral motion to exclude D.S. from testifying as a violation of LR2-308 based upon the State's continued representation that D.S. would not be testifying at trial and despite Defendant's failure to follow through with his request for a pretrial interview at the start of the case four years ago. [BIC 7; 7/9/2025 CD 10:31:30-34:45] Defendant then filed a written motion to exclude D.S.'s testimony on July 10, 2025, which the district court granted on July 11, 2025. [BIC 7]

**{6}** On appeal, the State argues that the district court erred by finding that the State was culpable for the failure to disclose, Defendant was prejudiced by the failure, and there were no lesser available sanctions. [BIC 9-13] *See Le Mier*, 2017-NMSC-017, ¶ 15. "We review a district court's decision regarding whether to exclude a witness for an abuse of discretion, viewing the evidence—and all inferences to be drawn from the evidence—in the light most favorable to the district court's decision." *State v. Multine*, 2025-NMCA-013, ¶ 39, ___ P.3d ___ (text only) (citation omitted). "Importantly, trial courts possess broad discretionary authority to decide what sanction to impose, and as an appellate court, we cannot second-guess our trial court's determinations as to how their discretionary authority is best exercised." *Id.* (text only) (citations omitted). "When, as in this case, a trial court is determining whether the exclusion of a witness is an appropriate remedy for a discovery violation, the court must consider the factors" from *Harper* and *Le Mier*. *Id.* "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Le Mier*, 2017-NMSC-017, ¶ 22 (internal quotation marks and citation omitted).

**{7}** First, the district court found that the State was culpable because it notified Defendant "with less than three (3) full business days before trial that the State would now be calling D.S." [2 RP 274] Additionally, the district court explained that the State had represented that D.S. would not testify from February 2024 on, and that even though Defendant failed to interview D.S. before his first trial, "the State had an obligation at a minimum to notify . . . Defendant they intended to call D.S. at the next trial so he could make a timely request for her interview" because "[w]ithout this knowledge, Defendant had no ability to request . . . the interview." [2 RP 268] The State argues that the district court erred because the State should be allowed to reconsider its position and strategy between Defendant's first and second trials. [BIC 9] Additionally, the State contends that Defendant should have been aware that D.S. could testify at trial, and that Defendant should have been more aggressive about scheduling a witness interview. [BIC 9-10] However, the State fails to address the basis of the district court's decision—that between February 2024 and July 2025 the State repeatedly represented to both the district court and Defendant that D.S. would not testify. While we agree that

the State was not prevented from changing its strategy between the trials, this does not excuse the State from its responsibility to notify Defendant of a change in witness status or other discovery matters according to the district court's scheduling order. *See id.* ¶ 24 ("Parties must obey discovery orders.").

**{8}** Next, the district court found that the prejudice to Defendant was high because the State's late disclosure of D.S. as a witness for trial "essentially amounts to trial by ambush" because Defendant relied on the State's representation that D.S. would not testify at trial and the district court had previously excluded the majority of D.S.'s statements that the State had otherwise attempted to introduce. [2 RP 268-69] The State asserts that the district court erred because Defendant failed to establish tangible prejudice because live testimony would allow Defendant to cross-examine D.S. and Defendant's failure to interview D.S. at the beginning of the proceedings. [BIC 11-12] We disagree. The State's argument on appeal misrepresents the prejudice suffered by Defendant. "When a court orders a party to provide discovery within a given time frame, failure to comply with that order causes prejudice both to the opposing party and to the court." *Id.* ¶ 25. Further, as our Supreme Court has explained, delayed disclosures result in prejudice when the delay prevents a defendant from effectively preparing and presenting their case. *See Harper*, 2011-NMSC-044, ¶ 19. The issue is not whether live testimony would be preferred, but rather the propriety of the admission of *any evidence* that the district court had previously excluded and that Defendant was not prepared to address based on the State's own representations. And despite the State's attempt to frame its late disclosure as Defendant's failure because he failed to interview D.S. at the beginning of the proceedings, "[t]he State neither has the authority, nor is in a position to delegate its responsibility to follow the clear and unambiguous scheduling order issued by the district court." *See State v. Cazares*, 2018-NMCA-012, ¶ 15, 409 P.3d 978.

**{9}** Finally, the district court determined that no lesser sanction was appropriate in this circumstance because LR2-308 prevents a district court from extending deadlines in its scheduling order that will delay the date scheduled for the commencement of trial. [2 RP 269] The State contends the district court failed to "sufficiently explore the availability of lesser sanctions or remedies," and argues that there were other sanctions that would have been more appropriate. [BIC 12] Additionally, the State contends that the district court could have continued the proceedings under LR2-308(J)(1)-(3), contrary to its decision that an extension of time was inappropriate under LR2-308. [BIC 12-23] We are not persuaded. "[T]he district court was not obligated to consider every conceivable lesser sanction before imposing witness exclusion." *See Le Mier*, 2017-NMSC-017, ¶ 27. To require this impinges on the district court's broad discretionary authority in these situations. Instead, "the court was only required to fashion the least severe sanction that best fit the situation *and* which accomplished the desired result." *Id.* We are additionally unpersuaded that the State's late disclosure amounts to the "good cause" or "exceptional circumstances" needed to continue a trial under LR2-308(J)(1)-(3). "Rather, our courts are encouraged to ensure the timely adjudication of cases, to proactively manage their dockets, and to utilize appropriate sanctions to vindicate the

public's interest in the swift administration of justice," and "our courts need not stand idly by and tolerate dilatory conduct by the parties." *Le Mier*, 2017-NMSC-017, ¶ 29.

**{10}**   For these reasons, we cannot describe the district court's decision to exclude D.S. under the three factors discussed in *Harper* and *Le Mier* "as clearly untenable or not justified by reason." *Le Mier*, 2017-NMSC-017, ¶ 22 (internal quotation marks and citation omitted). We therefore conclude that the district court did not abuse its discretion and affirm the district court's order excluding the testimony of D.S. as a discovery sanction for the State's violation of LR2-308.

**{11}**   Based on the foregoing, we affirm.

**{12}   IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**GERALD E. BACA, Judge**

**KATHERINE A. WRAY, Judge**